[No. 29120-1-III.    Division Three.    February 14, 2013.]

THE STATE OF WASHINGTON, *Respondent*, v. DAVID KELLOGG BREWCZYNSKI, *Appellant*.

542

544

*Eric J. Nielsen* and *Casey Grannis* (of *Nielsen, Broman & Koch PLLC*), for appellant.

*Steven J. Tucker, Prosecuting Attorney*, and *Mark E. Lindsey, Deputy*, for respondent.

¶1 KULIK, J. — David Brewczynski was convicted by a jury in Spokane County Superior Court of first degree murder with aggravating circumstances, first degree burglary, and theft of a firearm. On appeal, he contends (1) the amended information failed to give him notice that he faced

an alternative means of committing first degree burglary, (2) the trial court erred in instructing the jury on the uncharged alternative means of committing burglary, (3) defense counsel failed to impeach a key witness with evidence of a prior conviction, (4) the trial court erred in admitting expert testimony on footwear comparison evidence, (5) the jury was erroneously instructed that it must be unanimous to answer "no" to the special verdict, and (6) cumulative error denied him a fair trial. We stayed this case pending resolution of *State v. Kosewicz*, 174 Wn.2d 683, 278 P.3d 184, *cert. denied*, 133 S. Ct. 485 (2012). Following our Supreme Court's decisions in *Kosewicz* and in *State v. Guzman Nuñez*, 174 Wn.2d 707, 285 P.3d 21 (2012), we reverse the first degree burglary conviction, and affirm the convictions for first degree murder with aggravating circumstances and theft of a firearm.

## FACTS

¶2 On September 20, 2008, neighbors discovered the body of 80-year-old Kenneth Cross in the closet of his Spokane Valley bedroom. Mr. Cross had been shot once on the left side of his head and once on the right side of his head. He was also severely beaten, sustaining multiple skull and rib fractures. His back door showed signs of forced entry, and his basement office had been ransacked.

¶3 Earlier that day, Mr. Cross was visited by his housecleaner—Teresa Nelson—and his stepson—Douglas Livingstone—who both reported leaving the house by around 1:30 p.m. When a friend was unable to reach Mr. Cross later that day, she sent neighbors to check on him. They eventually discovered his body at about 7:30 p.m.

¶4 The police investigation first focused on Mr. Livingstone and Ms. Nelson. As a child, Mr. Livingstone had resented his stepfather and believed Mr. Cross's family was trying to prevent him from receiving money from Mr. Cross's estate. One officer reported that Mr. Livingstone

arrived at the scene of the crime that night and, before looking at anything, stated that he had heard that the back door was kicked in. Ms. Nelson gave inconsistent accounts of the day. She claimed Mr. Cross had showed her a pistol in his bedroom the day before he died and told her he would use it on anyone who tried to break into his house. A neighbor claimed he saw Ms. Nelson's car in Mr. Cross's driveway around 3:30 p.m. on the day he died.

¶5 William Lundin owned property in Spokane with a trailer house, a large garage containing a studio apartment, and a mobile home. Mr. Lundin lived in the trailer, a couple lived in the mobile home, and Mr. Brewczynski had lived in the garage studio apartment until he was evicted in early September 2008. Only Mr. Brewczynski and Mr. Lundin had keys to the garage. After Mr. Brewczynski moved out, Mr. Lundin changed the garage locks around September 25. On September 28, 2008, Mr. Lundin opened a paint bucket stored in the garage and found a little cooler containing a metal container wrapped in heavy foil. Inside the metal container were jewelry, a gun, gloves, and a wallet with Mr. Cross's identification and credit cards. Forensic tests later established that Mr. Cross's DNA[1] was on the gun and the outside of one of the gloves and that Mr. Brewczynski's DNA was on the inside of the glove. Additionally, a pair of boots was retrieved from Mr. Brewczynski that had Mr. Cross's blood and DNA on the outside.

¶6 Mr. Brewczynski was charged by amended information with premeditated first degree murder with aggravating circumstances (RCW 9A.32.030(1)(a), (c)), first degree burglary (RCW 9A.52.020(1)(a)), and theft of a firearm (RCW 9A.56.300). The jury convicted him of all charges and found by special verdict that he was armed with a firearm and committed the murder "in the course of, in furtherance of, or in immediate flight from" first degree burglary. Clerk's Papers (CP) at 113.

---

[1] Deoxyribonucleic acid.

## ANALYSIS

¶7 *Uncharged Alternative—Burglary.* Mr. Brewczynski first contends the amended information is constitutionally defective because it failed to include all the elements of the crime of first degree burglary. He essentially argues that the amended information was inadequate because he was charged with one means of committing first degree burglary, but the jury was allowed to consider an additional alternative means of committing first degree burglary in the jury instructions. He confuses the constitutional sufficiency of the amended information with the constitutionality of instructing the jury on uncharged alternatives.

¶8 An accused has a constitutional right to be informed of the charges he or she will face at trial. U.S. CONST. amend. VI; CONST. art. I, § 22 (amend. 10). A charging document is adequate only if it includes all essential elements of a crime—statutory and nonstatutory—so as to inform the defendant of the charges and to allow the defendant to prepare a defense. *State v. Vangerpen*, 125 Wn.2d 782, 787, 888 P.2d 1177 (1995). If a statute sets forth alternative means by which a crime may be committed, the information may charge one or all of the alternatives, provided the alternatives are not inconsistent with each other. *State v. Chino*, 117 Wn. App. 531, 539, 72 P.3d 256 (2003) (quoting *State v. Williamson*, 84 Wn. App. 37, 42, 924 P.2d 960 (1996)).

¶9 Relevant to these facts, a person commits first degree burglary if he or she enters or remains unlawfully in a building with intent to commit a crime against a person or property therein and while entering, remaining, or leaving the building, he or she (a) is armed with a deadly weapon or (b) assaults any person. RCW 9A.52.020(1). The State charged Mr. Brewczynski with entering and remaining unlawfully in Mr. Cross's building and, while in the building and in immediate flight from the building, being armed

with a handgun. Thus, the amended information properly included all the essential elements of first degree burglary under the alternative in RCW 9A.52.020(1)(a): being armed with a deadly weapon. *See Chino*, 117 Wn. App. at 540 (the defendant properly declined to allege that the information is defective for omitting the remaining alternatives and instead challenged the inclusion of uncharged alternatives in the jury instructions).

¶10 Mr. Brewczynski also, however, challenges the inclusion of an uncharged alternative in the first degree burglary instructions. Instruction 7 states that "[a] person commits the crime of burglary in the first degree when he or she enters or remains unlawfully in a building with intent to commit a crime against a person or property therein, and if, in entering or while in the building or in immediate flight therefrom, that person is armed with a deadly weapon *or* assaults any person." CP at 88 (emphasis added). The "to convict" instruction also requires the jury to find beyond a reasonable doubt that the defendant either was armed with a deadly weapon *or* assaulted a person. Consistent with the constitutional requirement that a defendant be informed of the charges he or she faces at trial, we review instructional errors de novo to determine whether the challenged instruction states the applicable law correctly. *State v. Aguilar*, 153 Wn. App. 265, 278-79, 223 P.3d 1158 (2009).

¶11 It is error to instruct the jury on alternative means that are not contained in the charging document. *See State v. Severns*, 13 Wn.2d 542, 548, 125 P.2d 659 (1942); *Chino*, 117 Wn. App. at 540. Here, the trial court erred in instructing the jury on the uncharged alternative of RCW 9A.52.020(1)(b) (assault of a person). This error may be harmless if other instructions clearly limit the crime to the charged alternative. *Severns*, 13 Wn.2d at 549; *Chino*, 117 Wn. App. at 540. None of the remaining instructions here limit the jury to consider solely the "armed with a deadly weapon" alternative of committing first degree burglary.

Moreover, the prosecutor in closing argument urged the jury to consider both alternatives. Consequently, the error is not harmless because it remains possible that the jury convicted Mr. Brewczynski on the basis of the uncharged alternative. *Chino*, 117 Wn. App. at 540-41.

¶12 Thus, we must reverse the stand-alone first degree burglary conviction due to instructional error. *Severns*, 13 Wn.2d at 548; *Chino*, 117 Wn. App. at 540-41 (The theft of a firearm conviction is not affected by the instructional error.). The remaining question is whether the validity of the aggravated murder conviction is affected by reversal of the burglary conviction.

■ ¶13 *Application of* Kosewicz—*Aggravating Factor for First Degree Murder.* As discussed above, the purpose of the essential elements rule is to inform the defendant of the charges against him or her so that he or she may prepare a defense. *State v. Kjorsvik*, 117 Wn.2d 93, 101, 812 P.2d 86 (1991). An aggravating factor, however, "is not the functional equivalent of an essential element, and, thus, need not be charged in the information to provide adequate notice to the defendant." *Kosewicz*, 174 Wn.2d at 692-93.

■ ¶14 In this case, the amended information alleged that Mr. Brewczynski murdered Mr. Cross "in the course of, in furtherance of or in immediate flight from the crime of Burglary in the First Degree." CP at 48. Significantly, the amended information did *not*, as it did in the separate charge of first degree burglary, allege that the burglary aggravating factor was committed solely under the "armed with a deadly weapon" alternative means. RCW 9A.52-.020(1)(a). In the usual case, when the aggravating factor requires proof of a separate offense, the alternative means of proof of the separate offense need not be pleaded. *Kosewicz*, 174 Wn.2d at 693. However, the amended information in this case—as in *Kosewicz*—muddied the water by limiting the stand-alone predicate crime (first degree burglary in this case; kidnapping in *Kosewicz*) to one alternative means. *Id.* at 694. Thus, Mr. Brewczynski could ar-

gue—as Mr. Kosewicz did—that he had notice only that the State intended to prove the predicate crime under the one alternative means.

¶15 The defendant in *Kosewicz* was charged with premeditated first degree murder with the aggravating factor of first degree kidnapping; he was also charged with the stand-alone crime of first degree kidnapping with the "intent to inflict bodily injury" alternative means.[2] *Id.* at 689. The jury instruction defined "kidnapping" so as to include both the intent to inflict bodily injury and the intent to inflict "extreme mental distress." *Id.* at 690. But the defendant did not object to this instruction on the ground that it included an uncharged alternative means of committing the crime. *Id.* On appeal, the Supreme Court recognized that a charging document that alleges only one alternative means for committing a stand-alone crime and does not limit the means of committing the same crime as an aggravator is "imprecise" and "unartful." *Id.* at 694 & n.3. Because the constitutional challenge to the information was made for the first time on appeal, the Supreme Court applied the two-pronged liberal construction rule and asked (1) whether the elements of the crime appeared in any form, or could be found by fair construction in the information, and (2) if so, whether the unartful charging language actually prejudiced the defendant. *Id.* at 694 (citing *Kjorsvik*, 117 Wn.2d at 105-06).

¶16 Here, as in *Kosewicz*, the amended information adequately apprised Mr. Brewczynski of the elements of aggravated first degree murder, without limiting the alternative means of committing the aggravator—in this case, first degree burglary. *Id.* at 695. No limitation on the aggravator offense in the amended information restricted the prosecutor from proving both alternative means of

---

[2] *Kosewicz* is consolidated with *State v. Brown*, involving a conviction of felony murder predicated on the felony of first degree kidnapping, and a stand-alone conviction of first degree kidnapping based on solely one charged alternative means. The facts in *Kosewicz* are more analogous to the facts in this case.

committing the crime. *Id.* Thus, here, as in *Kosewicz*, the defendant was reasonably apprised that the State could seek to prove the aggravator by one or both alternative means. *Id.*

¶17 We next turn to the second prong of the liberal construction rule and ask whether the unartful language was actually prejudicial. *Id.* at 696. Key to this determination is whether Mr. Brewczynski's defense depended on drawing a distinction between being armed with a deadly weapon and committing an assault on the victim. *See id.* Clearly no such distinction was made here because the sole defense was that Mr. Brewczynski did not commit the burglary or murder and had never been at the scene of the crimes. *See id.* Similarly, Mr. Kosewicz simply argued that he was not an accomplice to the kidnapping or the murder. Moreover, Mr. Brewczynski did not object to the jury instructions on the ground that the definition of "first degree burglary" permitted the jury to convict under either alternative means. As in *Kosewicz*, the defense of innocence and the failure to object to the jury instruction defeat Mr. Brewczynski's contention that the unartful language of the amended information actually prejudiced him. *Id.* at 697.

¶18 Mr. Brewczynski contends the facts in his case are distinguishable from *Kosewicz* because the prosecutor in closing argument here invited the jury to convict Mr. Brewczynski on an uncharged alternative means (assault) and then argued that the same conviction supported the aggravator for murder. As discussed above, the prosecutor's argument—and the jury instructions—erroneously allowed the jury to convict Mr. Brewczynski of first degree burglary on an uncharged alternative means. Contrary to Mr. Brewczynski's argument, however, the uncharged means *could* support the burglary aggravator for the purposes of the aggravated murder conviction because the amended information did not limit the means of committing first burglary as the aggravator felony. *See id.* at 693.

¶19 Relying on *Kosewicz*, we conclude that the imprecise language of the amended information—which alleged only

one alternative means for committing first degree burglary, yet did not limit the means of committing the same crime as an aggravator for premeditated murder—did not actually prejudice Mr. Brewczynski's defense against the aggravated murder charge. As in *Kosewicz*, Mr. Brewczynski received adequate constitutional notice of that charge. *Id.* at 698.

¶20 The trial court committed error in instructing on an uncharged alternative means of committing first degree burglary. Although the first degree burglary conviction must be reversed, the aggravated murder conviction may be affirmed.

¶21 *Ineffective Assistance of Counsel.* Mr. Brewczynski next contends defense counsel was ineffective by failing to impeach Mr. Lundin's testimony with evidence of a prior conviction. During direct examination, Mr. Lundin stated that when he was taking out the items from the metal container in the paint bucket, he did not touch the gun because he had been convicted of a felony 20 years earlier. Defense counsel then addressed the court out of the jury's hearing. Noting that Mr. Lundin's prior felony was for residential burglary, defense counsel indicated that he wanted to impeach Mr. Lundin's credibility with this crime. ER 609. The trial court expressed concern that the jury might consider Mr. Lundin an accessory to Mr. Brewczynski's crime. Defense counsel agreed with the court and decided to "leave it alone." Report of Proceedings (RP) at 817.

¶22 A criminal defendant is guaranteed the right to effective assistance of counsel. U.S. CONST. amend. VI; CONST. art. I, § 22; *State v. Grier*, 171 Wn.2d 17, 32, 246 P.3d 1260 (2011). Washington has adopted the *Strickland* two-pronged test to determine whether a defendant had constitutionally sufficient counsel. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *Grier*, 171 Wn.2d at 32. Under *Strickland*, the defendant carries the burden of showing (1) that counsel's performance fell below an objective standard of reasonableness and (2) that this deficient performance prejudiced the

defense. *Strickland*, 466 U.S. at 687-88. We defer to the decisions of defense counsel in the course of representation and strongly presume that counsel's performance was reasonable. *Grier*, 171 Wn.2d at 33. A defendant can rebut the presumption of reasonable performance by showing that there is no conceivable legitimate tactic or strategy to explain counsel's conduct. *Id.* (quoting *State v. Reichenbach*, 153 Wn.2d 126, 130, 101 P.3d 80 (2004)).

¶23 The record shows that Mr. Brewczynski's counsel considered impeaching Mr. Lundin's credibility but declined to do so because the jury might consider Mr. Lundin an accessory to Mr. Brewczynski in committing the charged crimes. We cannot say that this strategy lacked legitimacy. Mr. Brewczynski insists that defense counsel could have offered a limiting instruction under ER 105 to prevent the jury from using the impeachment evidence for an improper purpose. While it is true that such an instruction would help diminish any taint, it is also true that requiring the jury to remember evidence for one purpose and forget it for another would not be necessary if the evidence were never introduced. On balance, Mr. Brewczynski fails to show that defense counsel's conduct was unreasonable.

¶24 Moreover, he does not show that the failure to impeach Mr. Lundin with the prior conviction was an error so serious that it affected the outcome of the trial. *Id.* at 34 (quoting *State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009)); *Strickland*, 466 U.S. at 694. Mr. Lundin revealed on the stand that he had been convicted of a felony. As the State asserts, it is purely speculative whether more specific details of the conviction would have added to its impeachment value.

¶25 Mr. Brewczynski does not show ineffective assistance of counsel.

¶26 *Admission of Expert Footwear Comparison Evidence.* Mr. Brewczynski next contends the trial court erred in admitting expert footwear comparison evidence. He asserts that the testimony of forensic scientist Kevin Jen-

kins was inadmissible under the *Frye* standard and under ER 702. *Frye v. United States*, 54 App. D.C. 46, 293 F. 1013, 1014 (1923). We review the trial court's decision to admit or deny evidence under the *Frye* standard de novo. *State v. Cauthron*, 120 Wn.2d 879, 887, 846 P.2d 502 (1993), *overruled in part on other grounds in State v. Buckner*, 133 Wn.2d 63, 941 P.2d 667 (1997). The trial court's determination of whether expert testimony is admissible under ER 702 is reviewed for an abuse of discretion. *Id.* at 890.

¶27 Washington employs the *Frye* test to determine if evidence based on novel scientific procedures is admissible at trial. *Id.* at 886. The two-pronged test asks "(1) whether the scientific theory upon which the evidence is based is generally accepted in the relevant scientific community, and (2) whether the technique used to implement that theory is also generally accepted by that scientific community." *State v. Gentry*, 125 Wn.2d 570, 585, 888 P.2d 1105 (1995). A third prong, which asks whether the generally accepted technique was performed correctly, goes to the weight of the evidence, not to its admissibility. *Id.* at 586.

¶28 In this case, Mr. Brewczynski does not challenge the general acceptance of footwear impression evidence in the forensic science community. Indeed, he could not, because footwear comparisons have been used by the courts for over 100 years. *See Ibar v. State*, 938 So. 2d 451, 467 (Fla. 2006); *see also* RP at 281. Mr. Brewczynski argues instead that the technique used by Mr. Jenkins is not generally accepted in the community of footwear experts.

¶29 Mr. Brewczynski challenged the admissibility of this testimony pretrial. At the hearing on the motion to exclude, Mr. Jenkins testified that he made a clear plastic overlay of a photograph taken from a bloody boot print found in the closet near Mr. Cross's body. The print was imbedded in a blanket or bedspread on the floor of the closet. Because the blanket was malleable, it wrapped around the outside of the boot that made the print, leaving an impression of the outside edges of the sole as well as the bottom of the boot.

Mr. Jenkins decided that in order to make a similar impression with the suspect boot, he would shape clay around the bottom and sides of the boot, then carefully open and flatten the clay to compare the image with the overlay of the bloody print. He concluded that Mr. Brewczynski's right boot had a similar tread pattern and size and, therefore, could have made the print.

¶30 Mr. Brewczynski contends the wrapping of the clay around the boot is a novel technique that is not generally accepted in the forensic science community. He also challenges other techniques employed by Mr. Jenkins, including the hand-drawn overlay and the use of a photograph that did not comply with generally accepted practices, such as use of a tripod to ensure a proper angle on the image. He does not, however, challenge the generally accepted technique of using photographs of footwear prints to compare with impressions of suspected footwear. His arguments do not actually address the second prong of the *Frye* test, but the third prong: whether the technique employed by the expert was performed correctly. *Gentry*, 125 Wn.2d at 586.

¶31 As noted by the Connecticut Supreme Court in *State v. Hasan*, the *Frye* test is appropriate to those situations in which the scientific evidence has the potential to mislead lay jurors, who may be awed by the apparent infallibility of scientific experts and their techniques. *State v. Hasan*, 205 Conn. 485, 490, 534 A.2d 877 (1987) (quoting *United States v. Williams*, 583 F.2d 1194, 1199 (2d Cir. 1978)). Courts typically reject the *Frye* test when the method used by the expert is a matter of physical comparison rather than a scientific test. *Id.* "In such cases, the jury is in a position to weigh the probative value of the testimony without abandoning common sense and sacrificing independent judgment to the expert's assertions." *Id.* at 491. Here, Mr. Brewczynski had ample opportunity to challenge Mr. Jenkins's techniques during cross-examination. Defense counsel elicited that Mr. Jenkins did not have a certification in footwear examination and that Mr. Jen-

kins's techniques did not strictly comply with the standards adopted by a leading expert for photographing and comparing impressions. Additionally, the jury had the opportunity to compare the overlay and the photograph with the boot impression. The trial court correctly concluded that footwear analysis is generally accepted in the forensic community and that Mr. Jenkins's methodology was a question of weight for the jury rather than an issue of admissibility. *Gentry*, 125 Wn.2d at 586.

¶32 After determining that expert testimony is admissible under *Frye*, the trial court must also analyze whether the testimony is properly admitted under ER 702.[3] *Cauthron*, 120 Wn.2d at 889-90. As established above, this is a factual issue that is within the trial court's discretion. *Id.* at 890. Here, the trial court properly applied the two-part test, asking whether (1) the witness qualified as an expert and (2) the testimony would be helpful to the jury. *Id.* Substantial evidence supports the trial court's conclusions that Mr. Jenkins qualifies as an expert due to training and experience and that his testimony would be helpful to the jury. Thus, the trial court did not abuse its discretion in admitting Mr. Jenkins's expert testimony.

¶33 *Special Verdict Instruction—Unanimity.* Mr. Brewczynski also challenges—for the first time on appeal—the special verdict instruction, which directed the jury that it must be unanimous to answer "no" to the special verdict: "Because this is a criminal case, all twelve of you must agree in order to answer the special verdict forms 'yes,' you must unanimously be satisfied beyond a reasonable doubt that 'yes' is the correct answer. If you unanimously have a reasonable doubt as to this question, you must answer 'no.' " CP at 108. Mr. Brewczynski cites *State v. Bashaw*, 169

---

[3] ER 702 states, "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise."

Wn.2d 133, 147, 234 P.3d 195 (2010),[4] which held that a special verdict instruction requiring unanimity to find the absence of a special finding is an error and is not harmless.

¶34 Recently, however, the Supreme Court overruled *Bashaw*'s nonunanimity rule in *Guzman Nuñez*, 174 Wn.2d 707. Noting that the decision in *Bashaw* was based on an incorrect rule announced in a previous case[5] and conflicted with statutory authority, *Guzman Nuñez* upheld the giving of instructions that require unanimity for either "yes" or "no" special verdict answers. *Id.* at 709-10. The special verdict instruction in Mr. Brewczynski's case, consequently, was not in error.

¶35 *Cumulative Error.* Finally, Mr. Brewczynski contends multiple cumulative errors deprived him of a fair trial. Under the cumulative error doctrine, reversal of a defendant's conviction may be warranted if the combined effect of trial errors effectively denied the defendant a fair trial, even if each error standing alone may be considered harmless. *State v. Weber*, 159 Wn.2d 252, 279, 149 P.3d 646 (2006). The doctrine does not apply if the errors are few and have little or no effect on the trial outcome. *Id.* The only error here is the jury instruction on an uncharged alternative means of committing the first degree burglary stand-alone charge, and that error results in the reversal of the burglary conviction. Because Mr. Brewczynski fails to demonstrate additional trial errors, the cumulative error doctrine does not apply.

¶36 We reverse the burglary conviction, and affirm the aggravated murder and theft of a firearm convictions.

Korsmo, C.J., and Sweeney, J., concur.

Review denied at 177 Wn.2d 1026 (2013).

---

[4] *Overruled by Guzman Nuñez*, 174 Wn.2d at 719.

[5] *State v. Goldberg*, 149 Wn.2d 888, 894, 72 P.3d 1083 (2003), *overruled by Guzman Nuñez*, 174 Wn.2d at 713-14.