FILED
COURT OF APPEALS
DIVISION II

2013 OCT 15 AM 8: 55

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, Respondent, | No. 43219-6-II |
| v. | PUBLISHED OPINION |
| GARY LEE LINDSEY, JR., Appellant. | |

MAXA, J. – Gary Lee Lindsey, Jr., appeals his conviction for trafficking in stolen property under RCW 9A.82.050(1). He argues that this statute identifies eight alternative means of committing the crime, and based on this alternative means argument claims that (1) the charging document was factually deficient because it did not state facts supporting each alternative means, (2) he was denied a fair trial because the trial court instructed the jury on an uncharged alternative means of committing the offense, and (3) he was denied his constitutional right to an unanimous verdict because there was insufficient evidence to support conviction on several of the alternative means. Lindsey also argues that the trial court improperly refused to appoint new counsel when conflicts arose with his trial counsel, thereby violating his constitutional right to counsel.

We hold that RCW 9A.82.050(1) identifies only two alternative means, and on that basis reject Lindsey's arguments regarding the information and sufficiency of the evidence. We do not

consider Lindsey's challenge to the jury instruction because he did not object below. We also hold that the trial court did not abuse its discretion in refusing to appoint new counsel. We affirm.

## FACTS

*Charged Crime*

Earl Teel had possession of a large, 470-pound stainless steel tank that he hoped to sell on Craigslist. Teel placed the tank near a scrap bin where he deposited recyclable metals disposed of in his business.

On July 6, 2011, Teel observed a pickup truck drive onto his business property and then saw the driver – Lindsey – start looking through the scrap bin. Teel approached and asked Lindsey what he was doing, and Lindsey responded that he needed some cables to pull a log over an embankment for his firewood business. Teel told him to take the cables but not to return or take anything else without permission.

On July 10, Teel discovered that the tank was gone. Teel immediately called the police. The next morning Cowlitz County Deputy Sheriff Lorenzo Gladson went to GT Metals and Salvage and asked the owner to keep an eye out for anyone trying to scrap a stainless steel tank. One of GT Metals' employees later reported that someone was trying to scrap the lid to a stainless steel tank and would be returning with the rest of the tank. Gladson waited until Lindsey arrived with the tank and arrested him.

Gladson asked Lindsey how he got the tank. Lindsey responded that he had purchased it from someone known to him as a thief and that he knew the tank was stolen. Later, while sitting in the patrol car waiting for Teel to arrive, Lindsey remarked, " 'I might as well be honest with you. I took it.' " Report of Proceedings (RP) at 82. After matching the serial numbers on the

2

tank with those Teel had given him earlier, Gladson showed Teel a photograph of Lindsey. Teel identified Lindsey as the same man who had been at his business going through his scrap bin.

The State charged Lindsey with first degree trafficking in stolen property.[1] The amended information charged the following:

**TRAFFICKING IN STOLEN PROPERTY IN THE FIRST DEGREE**
The defendant, in the County of Cowlitz, State of Washington, on, about or between July 08, 2011, and July 11, 2011, did knowingly organize, plan, finance, direct, manage and/or supervise the theft of property, to-wit: steel tank and/or cover, for sale to others, or did knowingly traffic in stolen property, to wit: steel tank and/or cover, contrary to RCW 9A.82.050(1) and against the peace and dignity of the State of Washington.

Clerk's Papers (CP) at 1. This amended information omitted the word "initiate" before "organize", which is contained in the statutory language.

*Conflict with Counsel*

At three separate hearings before trial, the issue arose as to whether Lindsey and his appointed counsel had a conflict entitling Lindsey to a change of attorney. The trial court held a hearing on November 2, 2011, because of Lindsey's concerns. At that hearing, Lindsey expressly waived counsel's conflict of interest.

On November 30, Lindsey asked for a new attorney, asserting that his counsel was not doing enough to get the charges reduced and that his counsel was not helping him. The trial court denied his request. On December 8, Lindsey again requested new counsel, explaining that poor communication and lack of trust undermined his attorney-client relationship. Defense counsel explained that they had engaged in heated arguments over getting a lesser charge from

---

[1] The amended information also charged Lindsey with third degree driving while license suspended or revoked but the trial court dismissed this charge before trial.

3

the prosecutor, but that these arguments would not keep him from representing Lindsey fairly.

The trial court again denied the motion. The issue did not arise again.

*Trial*

At trial, the trial gave the following "to convict" instruction to the jury:

> To convict the defendant of the crime of Trafficking in Stolen Property in the First Degree, each of the following elements of the crime must be proved beyond a reasonable doubt:
> (1)　That on, about, or between July 8 and July 11, 2011, the defendant knowingly:
>     (a)　initiated, organized, planned, financed, directed, managed, and /or supervised the theft of property for sale to others; or
>     (b)　trafficked in stolen property with the knowledge that the property was stolen; and
> (2)　That this act occurred in the State of Washington.

Suppl. CP at 48. The instruction included the word "initiated" that had been omitted from the

amended information. Lindsey did not object to this instruction.

The jury returned a guilty verdict. At the sentencing hearing, Lindsey mentioned his

counsel when responding to the trial court's questions, saying, "He's [defense counsel] doing

good. Don't get me wrong." RP at 188.

## ANALYSIS

### A.　ALTERNATIVE MEANS ARGUMENTS

Lindsey argues that RCW 9A.82.050(1) identifies eight alternative means of committing

the crime of first degree trafficking in stolen property. Three of his assignments of error are

based on this argument. We disagree with this interpretation of RCW 9A.82.050(1).

RCW 9A.82.050 defines first degree trafficking in stolen property:

> (1) A person who knowingly initiates, organizes, plans, finances, directs, manages, or supervises the theft of property for sale to others, or who knowingly

4

traffics in stolen property, is guilty of trafficking in stolen property in the first degree.
(2) Trafficking in stolen property in the first degree is a class B felony.

Lindsey claims that this statute identifies eight alternative means for committing the crime: knowingly (1) initiating, (2) organizing, (3) planning, (4) financing, (5) directing, (6) managing and (7) supervising the theft of property for sale to others, and (8) knowingly trafficking in stolen property. The State contends that there are two alternative means: (1) knowingly initiating, organizing, planning, financing, directing, managing or supervising the theft of property for sale to others; and (2) knowingly trafficking in stolen property.

"An 'alternative means crime' is one 'that provide[s] that the proscribed criminal conduct may be proved in a variety of ways.' " *State v. Peterson*, 168 Wn.2d 763, 769, 230 P.3d 588 (2010) (alteration in original) (quoting *State v. Smith*, 159 Wn.2d 778, 784, 154 P.3d 873 (2007)). Because the legislature has not defined what constitutes an alternative means crime, whether a statute provides an alternate means for committing a particular crime is left to judicial determination. *Peterson*, 168 Wn.2d at 769. However, there is no bright-line rule for making this determination and each case must be evaluated on its own merits. *Peterson*, 168 Wn.2d at 769.

Washington cases suggest some guidelines for analyzing the alternative means issue. Merely stating methods of committing a crime in the disjunctive does not mean that there are alternative means of committing a crime. *Peterson*, 168 Wn.2d at 770. Definitional statutes do not create additional alternative means for a crime. *Smith*, 159 Wn.2d at 785. And a statute divided into subparts is more likely to be found to designate alternative means. *See State v. Al-Hamdani*, 109 Wn. App. 599, 607, 36 P.3d 1103 (2001) (distinguishing statutes for alternative means purposes because they separate means by subparts).

Reviewing RCW 9A.82.050(1) as a whole convinces us that the legislature intended two alternative means of committing the crime of trafficking in stolen property rather than eight. First, the placement and repetition of the word "knowingly" suggests that the legislature intended two means. The first "knowingly" clearly relates to all seven terms in the first part of the statute – "initiates, organizes, plans, finances, directs, manages, or supervises" – as a group. If each word was interpreted as standing on its own, the knowing requirement would apply only to "initiates". Similarly, the phrase "the theft of property for sale to others" relates to the entire group. Treating these terms as a group indicates that they represent multiple facets of a single means of committing the crime. And use of the word "knowingly" a second time before the phrase "trafficking in stolen property" indicates that this is a separate means set apart from the other group. If the statute described eight means, there would be no need to use the word knowingly again.

Second and similarly, the statute repeats the word "who". The statute thus contains two parts with each using "who" as a subject and separated with a disjunctive, making two independent clauses. Each clause describes distinct means of committing the offense. If the statute described eight means there would be no need to use the word "who" again.

Third, the first group of seven terms relate to different aspects of a single category of criminal conduct – facilitating or participating in the theft of property so that it can be sold. As a result, these terms appear to be definitional. They are examples of such facilitation or participation. As noted above, definitional statutes do not create multiple alternative means for a crime. *Smith*, 159 Wn.2d at 785. And trafficking in stolen property involves a second, separate category – transferring possession of property known to be stolen – defined separately in RCW 9A.82.010(19).

Finally, although RCW 9A.82.050(1) is not formally divided into subparts, the statutory language easily divides into two sections describing two different offenders: a person who knowingly facilitates or participates ("initiates, organizes, plans, finances, directs, manages, or supervises") the theft of property for sale to others, and a person who knowingly transfers possession ("traffics") of stolen property. If the legislature had designated the two sections of the statute as subparagraphs (a) and (b), there would be no question that it was describing only two alternative means. But even in the absence of such a designation, the paragraph structure compels the conclusion that the statute describes only two means.

Our holding is consistent with *Peterson*, where the court held that the failure to register as a sex offender statute proscribed a single act, not distinct acts, and therefore was not an alternative means crime. 168 Wn.2d 770. The court contrasted this with the theft statute, which proscribes distinct acts constituting theft. *Peterson*, 168 Wn.2d 770. Similarly, in *State v. Laico*, 97 Wn. App. 759, 762, 987 P.2d 638 (1999), the court held that the three definitions of "great bodily harm" for first degree assault did not create three alternative means for committing the offense. Accordingly, jury unanimity with regard to the existence of great bodily harm did not require unanimity as to the type of great bodily harm. *Laico*, 97 Wn. App. at 762.

Lindsey relies on *State v. Strohm*, 75 Wn. App. 301, 879 P.2d 962 (1994), where Division One of this court addressed alternative means in the context of former RCW 9A.82.050(2) (1984).[2] But the issue in that case was not the number of alternative means described in former RCW 9A.82.050(2). Instead, Strohm argued that former RCW 9A.82.010(10) (1994), which

---

[2] Former RCW 9A.82.050(2) was the statute in effect in 1994. The statute was recodified as RCW 9A.82.050(1) in 2003.

defined "traffic",[3] listed several alternative means of trafficking in stolen property in addition to the means stated in former RCW 9A.82.050(2). *Strohm*, 75 Wn. App. at 307-08. Division One rejected this argument, reasoning that definitional statutes do not create alternative means of committing an offense. *Strohm*, 75 Wn. App. at 308-09. The court explained that this is because the legislature was defining an element of the offense, not creating alternate elements. *Strohm*, 75 Wn. App. at 308 (citing *State v. Garvin*, 28 Wn. App. 82, 85, 621 P.2d 215 (1980)).

At the beginning of its discussion, Division One stated without analysis or comment that former RCW 9A.82.050(2) had eight alternative means. *Strohm*, 75 Wn. App. at 307. After rejecting the Strohm's argument that the definition of "traffic" contained additional alternative means, the court concluded that sufficient evidence supported a conviction on each of the eight means. *Strohm*, 75 Wn. App. at 309. Years later, Division One repeated without analysis its statement in *Strohm* that RCW 9A.82.050 identifies eight alternative means. *State v. Hayes*, 164 Wn. App. 459, 476, 262 P.3d 538 (2011). However, the issue of whether RCW 9A.82.050 identifies two or eight alternative means was not before the court in either *Strohm* or *Hayes*. And the court did not actually discuss in either case the alternative means issue with respect to RCW 9A.82.050.

Based on our analysis of the statutory language discussed above, we decline to follow the dicta in *Strohm*. We conclude that there are two means of committing first degree trafficking in

---

[3] Former RCW 9A.82.010(10) (now codified at RCW 9A.82.010(19)) provided:
> "Traffic" means to sell, transfer, distribute, dispense, or otherwise dispose of stolen property to another person, or to buy, receive, possess, or obtain control of stolen property, with intent to sell, transfer, distribute, dispense, or otherwise dispose of the property to another person.

stolen property: (1) facilitating the theft of property so that it can be sold and (2) facilitating the sale of property known to be stolen. We now turn to Lindsey's specific arguments.

1. Sufficiency of the Information

Lindsey claims that the amended information did not properly apprise him of the factual basis for the charges, depriving him of his constitutional right to notice. Specifically, he argues that the information set out eight alternative means of committing first degree trafficking in stolen property and the information did not provide sufficient facts to ascertain what alleged conduct constituted the offense. We disagree.

Article I, section 22 of the Washington Constitution provides in part, "In criminal prosecutions the accused shall have the right . . . to demand the nature and cause of the accusation against him." The Sixth Amendment to the United States Constitution provides in part, "In all . . . prosecutions, the accused shall . . . be informed of the nature and cause of the accusation." CrR 2.1(a)(1) provides in part that "the information shall be a plain, concise and definite written statement of the essential facts constituting the offense charged."

Lindsey did not object to the sufficiency of the information or request a bill of particulars below. However, a challenge to the constitutional sufficiency of a charging document may be raised for the first time on appeal. *State v. Kjorsvik*, 117 Wn.2d 93, 102, 812 P.2d 86 (1991). We review challenges to the sufficiency of a charging document de novo. *State v. Williams*, 162 Wn.2d 177, 182, 170 P.3d 30 (2007). But where the defendant challenges the sufficiency of an information for the first time on appeal, this court construes the document liberally in favor of validity. *State v. Brown*, 169 Wn.2d 195, 197, 234 P.3d 212 (2010). Under this liberal construction rule, we will uphold the charging document if an apparently missing element may be "fairly implied" from the language within the document. *Kjorsvik*, 117 Wn.2d at 104. The

test is: "(1) do the necessary facts appear in any form, or by fair construction can they be found, in the charging document; and, if so, (2) can the defendant show that he was nonetheless actually prejudiced by the inartful language which caused a lack of notice?" *Kjorsvik*, 117 Wn.2d at 105-06.

Under the "essential elements" rule, a charging document must allege facts supporting every element of the offense in addition to adequately identifying the crime charged. *State v. Leach*, 113 Wn.2d 679, 689, 782 P.2d 552 (1989). "It is sufficient to charge in the language of a statute if it defines the offense with certainty." *State v. Elliott*, 114 Wn.2d 6, 13, 785 P.2d 440 (1990) (citing *Leach*, 113 Wn.2d at 686). The primary goal of the essential elements rule is to give notice to an accused of the nature of the crime that he must be prepared to defend against. *Kjorsvik*, 117 Wn.2d at 101 (citing 2 W. LaFave & J. Israel, Criminal Procedure § 19.2, at 446 (1984); 1 C. Wright, Federal Practice § 125, at 365 (2d ed. 1982)). All essential elements of the crime charged, including nonstatutory elements, must be included in the charging document so that a defense can be properly prepared. *Kjorsvik*, 117 Wn.2d at 101-02.

In *State v. Winings*, 126 Wn. App. 75, 84–85, 107 P.3d 141 (2005), the State charged Winings with second degree assault while armed with a deadly weapon but failed to identify the victim, the weapon used, or how Winings used the weapon. We held that the information, although vague, was constitutionally sufficient because it alleged assault of another with a deadly weapon in violation of RCW 9A.36.021 and it included the assault's date and location. *Winings*, 126 Wn. App. at 86.

Here, the information alleged that Lindsey knowingly facilitated in the theft of property for sale to others and trafficked in stolen property in violation of RCW 9A.82.050(1), quotes the statute, identifies the stolen property, and alleges the applicable dates and county of the crime.

10

No. 43219-6-II

Great specificity is not required, only sufficient facts for each element. *Winings*, 126 Wn. App. at 85. These details in the information, read liberally and in a common sense manner, were sufficient to give notice to Lindsey regarding the nature of the charges.

Lindsey seems to argue that because the statute provides eight alternative means for committing the crime, the information was required to provide specific facts supporting each of eight means. We disagree. As we have just held, RCW 9A.82.050(1) describes only two alternative means of committing trafficking in stolen property, and the information here provided Lindsey with sufficient detail for both means.

Ordinarily, we next would consider whether the defendant was, nonetheless, prejudiced by the "inartful language" of the information. *Kjorsvik*, 117 Wn.2d at 106. But Lindsey does not argue prejudice. Because he has the burden of raising and demonstrating prejudice, we decline to further consider the issue. *See generally Kjorsvik*, 117 Wn.2d at 106.

We hold that the information was constitutionally sufficient to provide Lindsey notice of the charge against him.

2. Instruction on Uncharged Alternative

The amended information did not include "initiated" as a means of committing trafficking in stolen property, but the "to convict" instruction did. Lindsey argues that instructing the jury on this uncharged alternative was error requiring reversal of his conviction. However, we need not address this argument because Lindsey failed to object to the instruction at trial.

The Sixth Amendment to the U.S. Constitution and article I, section 22 of the Washington Constitution require that an accused be informed of the charges he/she must face at trial. Accordingly, when an information alleges certain alternative means of committing an

11

offense, it is error to instruct the jury on uncharged means allowable under the criminal statute. *State v. Brewczynski,* 173 Wn. App. 541, 549, 294 P.3d 825, *review denied,* 177 Wn.2d 1026 (2013). This is because " '[o]ne cannot be tried for an uncharged offense.' " *State v. Chino,* 117 Wn. App. 531, 540, 72 P.3d 256 (2003) (quoting *State v. Bray,* 52 Wn. App. 30, 34, 756 P.2d 1332 (1988)). But the error can be harmless if other instructions define the crime in a manner that leaves only the charged alternative before the jury. *Brewczynski,* 173 Wn. App. at 549.

However, Lindsey did not object to the to-convict instruction at trial and raises this issue for the first time on appeal. RAP 2.5(a) states that "[t]he appellate court may refuse to review any claim of error which was not raised in the trial court." The purpose behind this rule is to encourage the efficient use of judicial resources by ensuring that the trial court has the opportunity to correct any errors, thereby avoiding unnecessary appeals. *State v. Robinson,* 171 Wn.2d 292, 304-05, 253 P.3d 84 (2011). RAP 2.5(a)(3) further states that a party may raise particular types of errors for the first time on appeal, including "manifest errors affecting a constitutional right". But Lindsey fails to argue that any of the exceptions listed in RAP 2.5(a) apply. Therefore, we do not address his claim regarding inclusion of an uncharged alternative in the to-convict instruction.

3.    Right to Unanimous Verdict

Lindsey argues that the State failed to present evidence that he violated all eight charged means of committing his offense, which violated his right to a unanimous verdict in the absence of a special verdict. In particular, he argues that there was no evidence that he organized, directed, managed, supervised, or financed the theft of property for sale to others. Based on our holding above that there are only two alternative means for committing the crime of trafficking in stolen property, we reject Lindsey's argument.

No. 43219-6-II

Article I, section 21 of the Washington Constitution guarantees criminal defendants the right to a unanimous jury verdict. "In certain situations, the right to a unanimous jury trial also includes the right to express jury unanimity on the *means* by which the defendant is found to have committed the crime." *State v. Ortega-Martinez,* 124 Wn.2d 702, 707, 881 P.2d 231 (1994) (emphasis in original) (citing *State v. Green,* 94 Wn.2d 216, 616 P.2d 628 (1980)). When sufficient evidence exists to support each alternative means submitted to the jury, a jury expression of unanimity is unnecessary because we infer that the jury was unanimous as to the means. *Ortega-Martinez,* 124 Wn.2d at 707-08 (citing *State v. Whitney,* 108 Wn.2d 506, 739 P.2d 1150 (1987)).

Although first degree trafficking in stolen property is an alternative means crime, it proscribes only two alternatives rather than eight. Lindsey concedes that there is evidence to support at least three of the definitions listed in the first part of RCW 9A.82.050(1), and we observe that substantial evidence supports the second part of the subsection. Accordingly, we hold that Lindsey's argument regarding unanimity fails.

B.    RIGHT TO CHANGE OF COUNSEL

Lindsey argues that the trial court abused its discretion in denying his repeated requests for new counsel, violating his Sixth and Fourteenth Amendment right to counsel. He argues that the trial court should have conducted a more thorough investigation, especially when it appeared that the attorney-client relationship had deteriorated to the point where the two could not work together. We disagree.

We review a trial court's refusal to appoint new counsel for an abuse of discretion. *State v. Cross,* 156 Wn.2d 580, 607, 132 P.2d 80 (2006). "There is an abuse of discretion when the trial court's decision is manifestly unreasonable or based upon untenable grounds or reasons."

13

*State v. Brown*, 132 Wn.2d 529, 572, 940 P.2d 546 (1997). "A decision is based 'on untenable grounds' or made 'for untenable reasons' if it rests on facts unsupported in the record or was reached by applying the wrong legal standard." *State v. Rohrich*, 149 Wn.2d 647, 654, 71 P.3d 638 (2003) (internal quotation marks omitted) (quoting *State v. Rundquist*, 79 Wn. App. 786, 793, 905 P.2d 922 (1995)). In assessing the trial court's decision, we look at (1) the extent of the conflict between attorney and client, (2) the adequacy of the trial court's inquiry into that conflict, and (3) the timeliness of the motion for appointment of new counsel. *Cross*, 156 Wn.2d at 607.

As noted above, on three separate occasions the trial court addressed Lindsey's requests for new counsel. At the first hearing, Lindsey waived his claim that a conflict of interest existed. At the second hearing, Lindsey felt that his attorney was not doing enough to help him with his mental health issues and in getting the State to reduce the charges. And at the third hearing, one day before trial, Lindsey complained that the two had a communication problem, they had yelled at each other, and Lindsey had hung up the telephone on counsel. Defense counsel assured the trial court that he did not believe that these communication issues would prevent him from competently representing Lindsey or that they would cause him to compromise his representation.

Under the *Cross* factors, Lindsey has failed to show that the trial court abused its discretion. First, although there appeared to be some friction between Lindsey and his counsel, the conflict did not appear too serious. At the first hearing, Lindsey waived his claim that a conflict of interest existed. At the second hearing, Lindsey felt that his attorney was not doing enough to help him but did not articulate a specific basis for withdrawal. And Lindsey's reasons for wanting a change of counsel seemed to change as the time for trial neared, suggesting that

14

they were fleeting requests not based on a tangible conflict. Second, the trial court held three hearings in which it inquired about the possible conflict. At the third hearing, the trial court expressly considered whether defense counsel was prepared for trial and the extent of the communications breakdown. Only when defense counsel provided assurance that he could provide competent representation did the trial court deny the motion. Finally, it is worth noting that Lindsey did not raise any concerns about a conflict with counsel during trial or after the jury returned a guilty verdict. In fact, at his sentencing he expressed satisfaction with counsel.

We hold that the trial court did not abuse its discretion in denying Lindsey's requests to appoint new trial counsel.

We affirm.

_____
MAXA, J.

We concur:

_____
HUNT, J.

_____
WORSWICK, C.J.

15