
# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHNGTON, | ) | NO. 72598-0-I |
| | ) | |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| PATRICK DENNIS KING, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: December 7, 2015 |
| | ) | |

LAU, J. — A jury convicted Patrick King of attempted second degree burglary and

possession of burglary tools. King appeals his conviction for possession of burglary

tools. He contends a discrepancy between the State's information and the to-convict

instruction violated his right to fair notice and permitted the jury to convict him on

uncharged alternative means. He also contends that the trial court's findings do not

support its offender score calculation. Finding no errors, we affirm the judgment and

sentence.

## FACTS

On October 31, 2013, City of Kent police officers responded to an alarm at a

CenturyLink facility. They arrived 30 seconds after the alarm was triggered. Officer

Whitley saw Patrick King and Bradly Bachmann walking away from a hole in the fence. Both men were wearing yellow reflective vests. Officer Whitley ordered them to get on the ground. Bachmann fled, but King remained on the ground. After arresting King, Officer Whitley discovered a flashlight and a small handsaw in his pocket. When other officers searched the area, they found the yellow vest King had been wearing, gloves, a magnetic tool, and another saw. When they inspected the fence, officers found a pair of plier-type wire cutters.

On July 9, 2014, the State charged King on one count of second degree attempted burglary[1] and one count of possession of burglary tools. The information identified two specific tools that King allegedly possessed:

> [T]he defendant Patrick Dennis King in King County, Washington, on or about October 31, 2013, did have in his possession a tool or implement commonly used for the commission of burglary, to-wit: flashlight and saw under circumstances evincing an intent to use or employ or allow the same to be used or employed in the commission of a burglary.

Clerk's Papers (CP) at 9 (emphasis added). During trial, the State introduced evidence of other tools discovered at the scene. During closing argument, the prosecutor mentioned that King and his accomplice used saws, pliers or wire cutters, and yellow reflective vests. The "to-convict" instruction included a broader list of potential burglary tools:

> To convict the defendant of the crime of making or having burglary tools, as charged in Count 2, each of the following elements of the crime must be proved beyond a reasonable doubt:
>
> (1) That on or about October 31, 2013, the defendant possessed an engine, machine, tool, false key, pick lock,

---

[1] King does not appeal this conviction.

bit, nippers or implement adapted, designed, or commonly used for the commission of burglary;

(2) That the defendant's actions were under circumstances evincing an intent to use or employ, or allow the tools to be used or employed, or knowing that the tools were intended to be used or employed, in the commission of a burglary; and

(3) That this act occurred in the State of Washington.

If you find from the evidence that each of these elements has been proved beyond a reasonable doubt, then it will be your duty to return a verdict of guilty as to Count 2.

On the other hand, if, after weighing all of the evidence, you have a reasonable doubt as to any one of these elements, then it will be your duty to return a verdict of not guilty as to Count 2.

CP at 31 (emphasis added). The language in the "to-convict" instruction mirrors the language in RCW 9A.52.060, the statute prohibiting possession of burglar tools.[2] No other jury instruction limited the burglar tools to a saw and a flashlight.

King was convicted as charged following a jury trial. He was sentenced to 12.75 months imprisonment for the burglary charge and 364 days to run concurrently for the possession of burglary tools charge. King appeals.

---

[2] "Every person who shall make or mend or cause to be made or mended, or have in his or her possession, any engine, machine, tool, false key, pick lock, bit, nippers, or implement adapted, designed, or commonly used for the commission of burglary under circumstances evincing an intent to use or employ, or allow the same to be used or employed in the commission of a burglary, or knowing that the same is intended to be so used, shall be guilty of making or having burglar tools."
RCW 9A.52.060 (emphasis added).

## ANALYSIS

### The Information and Jury Instructions

The main basis for King's appeal stems from an alleged discrepancy between the information and the jury instructions. The information identified two specific burglar tools—a saw and a flashlight. The "to-convict" instruction provided a broader list of potential tools consistent with state statute. King argues this discrepancy violated his rights in two ways. First, because the "to-convict" instruction contained more examples of burglar tools than the information, the jury was permitted to convict him on uncharged alternative means. Second, the information violated his right to notice because it did not alert him to the various tools the State alleged he possessed. Both of these arguments fail.

### Uncharged Alternative Means

The jury instructions here did not permit the jury to convict King on uncharged alternative means because possession of burglary tools is not an alternative means crime.

Criminal defendants have the right to a unanimous jury verdict. This right includes the right to a unanimous jury determination as to the means by which the defendant committed the crime when the defendant is charged with an alternative means crime. State v. Owens, 180 Wn.2d 90, 95, 323 P.3d 1030 (2014). An alternative means crime provides that proscribed criminal conduct may be proved in a variety of ways. State v. Smith, 159 Wn.2d 778, 784, 154 P.3d 873 (2007). Typically, alternative means crimes are created by statutes setting forth more than one means by which the offense may be committed. Smith, 159 Wn.2d at 784. "It is error to instruct the jury on

-4-

alternative means that are not contained in the charging document." State v. Brewczynski, 173 Wn. App. 541, 549, 294 P.3d 825 (2013).

King presents no authority or legal analysis supporting his argument that possession of burglary tools is an alternative means crime. His brief assumes that because a "burglary tool" could be one of many different tools, it is an alternative means crime, and the State must therefore identify which specific tools he possessed. Due to the lack of authority and analysis, we can ignore this argument. See RAP 10.3(a)(6) (parties are required to support their arguments with citations to legal authority and references to relevant parts of the record); Norcon Builders, LLC v. GMP Homes VG, LLC, 161 Wn. App. 474, 486, 254 P.3d 835 (2011) ("We will not consider an inadequately briefed argument."); Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 809, 828 P.2d 549 (1992) (arguments not supported by legal authority or citation to the record need not be considered).

This assertion nevertheless fails. The list of tools provided in the "to-convict" instruction did not present the jury with any alternative means to convict King because possession of burglary tools is not an alternative means crime. In Owens, the court explained that listing several definitional terms does not create an alternative means of committing a crime:

> One guiding principle is that the use of a disjunctive "or" in a list of methods of committing the crime does not necessarily create alternative means of committing the crime. Another principle provides that the alternative means doctrine does not apply to mere definitional instructions; a statutory definition does not create a "means within a means."

Owens, 180 Wn.2d at 96 (quoting Smith, 159 Wn.2d at 787) (citation omitted). The Owens court considered a statute providing that "a person who knowingly initiates,

organizes, plans, finances, directs, manages, or supervises the theft of property for sale to others, or who knowingly traffics in stolen property, is guilty of trafficking in stolen property in the first degree." Owens, 180 Wn.2d at 96 (quoting RCW 9A.82.050(1)). The court rejected the argument that the statute created eight different alternative means—that a defendant could be guilty of trafficking in stolen property by knowingly (1) initiating, (2) organizing, (3) planning, (4) financing, (5) directing, (6) managing, or (7) supervising the theft of property for sale to others, or by knowingly (8) trafficking in stolen property. Owens, 180 Wn.2d 97-98. Instead, the court held that "the first group of seven terms relate to different aspects of a single category of criminal conduct," and therefore do not constitute alternative means. Owens, 180 Wn.2d at 98 (quoting State v. Lindsey, 177 Wn. App. 233, 241-42, 311 P.3d 61 (2013)).

The same rationale applies here. The list of tools provided in the "to-convict" instruction, derived from statute, "relate to different aspects of a single category of criminal conduct." Owens, 180 Wn.2d at 98 (quoting Lindsey, 177 Wn. App. at 242). This list merely defines a broad category of burglary tools relevant to the offense. It does not create alternative means of committing the offense. See Owens, 180 Wn.2d at 96 ("alternative means doctrine does not apply to mere definitional instructions"). The Owens court emphasized that alternative means analysis "focuses on the different underlying acts that could constitute the same crime . . . [A] statute [does] not create alternative means [when] an individual's conduct in each [scenario does] not vary significantly." Owens, 180 Wn.2d at 96-97. When the State charges a defendant with possession of burglary tools, the specific tool possessed is irrelevant to the underlying criminal conduct. In other words, the State did not create alternative means to convict

-6-

King when it provided a broader list of potential burglary tools in the jury instructions because the underlying "conduct in each of the . . . scenarios [does] not vary significantly." Owens, 180 Wn.2d at 97. Further, "a statute divided into subparts is more likely to be found to designate alternative means." State v. Lindsey, 177 Wn. App. 233, 241, 311 P.3d 61 (2013). The statute here is not divided into subparts. See RCW 9A.52.060. King's alternative means challenge fails.

Right to Notice

King also alleges that the discrepancy between the information and the jury instructions violated his right to notice. This argument fails. The information properly afforded King notice of the nature of the alleged offense.

Like his uncharged alternative means argument, King's brief inadequately addresses this issue. He cites no authority and provides minimal analysis supporting his contention that the discrepancy between the information and the jury instructions violates his right to notice. We can ignore this issue due to King's inadequate briefing. See RAP 10.3(a)(6) (parties are required to support their arguments with citations to legal authority and references to relevant parts of the record); Norcon Builders, LLC, 161 Wn. App. at 486 ("We will not consider an inadequately briefed argument."); Cowiche Canyon Conservancy, 118 Wn.2d at 809 (arguments not supported by legal authority or citation to the record need not be considered).

In any event, the information here was adequate. An accused person has a constitutional right to be informed of the charges he or she will face at trial. Brewczynski, 173 Wn. App. at 548. "All essential elements of a crime, statutory or otherwise, must be included in a charging document in order to afford notice to an

accused of the nature and cause of the accusation against him." State v. Kjorsvik, 117 Wn.2d 93, 97, 812 P.2d 86 (1991).

The information here included all essential elements of the crime. The statute prohibiting possession of burglary tools provides:

> Every person who shall make or mend or cause to be made or mended, or have in his or her possession, any engine, machine, tool, false key, pick lock, bit, nippers, or implement adapted, designed, or commonly used for the commission of burglary under circumstances evincing an intent to use or employ, or allow the same to be used or employed in the commission of a burglary, or knowing that the same is intended to be so used, shall be guilty of making or having burglar tools.

RCW 9A.52.060(1). The information here alleged:

> That the defendant Patrick Dennis King in King County, Washington, on or about October 31, 2013, did have in his possession a tool or implement commonly used for the commission of burglary, to-wit: flashlight and saw under circumstances evincing an intent to use or employ or allow the same to be used or employed in the commission of a burglary.

CP at 9. The information provided adequate notice to King of the essential elements of the alleged offense. See Kjorsvik, 117 Wn.2d at 97.

However, King never argues that the information failed to include an essential element of the offense. Instead he contends that the discrepancy between the information and the jury instructions violated his right to notice. King's argument seems to be that when the State included a reference to a flashlight and saw in the information, it essentially added those specific tools as an element to the offense. The State was therefore required to prove possession of those tools and the instructions alluding to other tools amount to uncharged alternative means—i.e., it "elected" to prove possession of a flashlight and saw rather than other tools.

-8-

As explained above, the jury instructions did not permit the jury to convict King on an uncharged alternative means. Further, the State did not add an element to the offense by referencing a flashlight and a saw in the information. The mere inclusion of surplus language in a criminal information does not create an element of the crime that the State is required to prove. State v. Tvedt, 153 Wn.2d 705, 718, 107 P.3d 728 (2005); see also State v. Fitzpatrick, 141 Wn. 638, 642, 251 P. 875 (1927) ("The objection to the information is the allegation with reference to 'miscellaneous implements and tools.' This may be regarded as surplusage and the information still charge the crime, because it alleges the possession of false keys and picklocks with the intent to use them in the commission of a [burglary]."). Because the specific type of tool King possessed was not an element of the crime, the State did not violate his right to notice. Nor did the instructions permit the jury to convict King on uncharged alternative means.

Offender Score Calculation

Next, King argues that the trial court failed to accurately calculate his offender score when it included convictions that should have washed out under the Sentencing Reform Act (SRA). But even if we assume, without deciding, that the trial court erred, King's offender score calculation would be the same on remand.

A sentencing court acts without authority under the SRA when it imposes a sentence based upon a miscalculated offender score. State v. Johnson, 180 Wn. App. 92, 99-100, 320 P.3d 197 (2014). A sentencing court's failure to follow the SRA may be raised on appeal even if no objection was raised below. State v. Ford, 137 Wn.2d 472, 484-85, 973 P.2d 452 (1999). The SRA requires a sentencing court to determine an

offender score by taking three steps: "(1) identify all prior convictions; (2) eliminate those that wash out; (3) 'count' the prior convictions that remain in order to arrive at an offender score." State v. Moeurn, 170 Wn.2d 169, 175, 240 P.3d 1158 (2010). The State must prove a defendant's criminal history by preponderance of the evidence. Ford, 137 Wn.2d at 479-80.

Here, the trial court determined that King's offender score was 5 based on prior felony convictions. The judgment and sentence lists these convictions as follows:

The defendant has the following criminal history used in calculating the offender score (RCW 9.94A.525):

| Crime | Sentencing Date |
|---|---|
| Protection order viol-felony | 10/05/2007 |
| Tampering with a witness | 10/05/2007 |
| Bail jumping | 10/05/2007 |
| Cont sub-possess no prescription | 11/30/2005 |
| Cont subst vio a: mfg/delvr/p | 4/19/1995 |

CP at 52. King argues these felonies washed out before he committed the present offense and therefore should not be included in his offender score calculation.

Under the SRA, a conviction washes out if the defendant has spent a certain amount of time in the community without committing a crime. RCW 9.94A.525 states that a Class B felony washes out after ten years and a Class C felony washes out after five years:

> (b) Class B prior felony convictions other than sex offenses shall not be included in the offender score, if since the last date of release from

confinement . . . the offender had spent ten consecutive years in the community without committing any crime that subsequently results in a conviction.

(c) . . . class C prior felony convictions other than sex offenses shall not be included in the offender score if, since the last date of release from confinement . . . the offender had spent five consecutive years in the community without committing any crime that subsequently results in a conviction.

RCW 9.94A.525(2)(b)-(c). Given the list of convictions provided in the trial court's findings, at least some of these convictions arguably should have washed out.

However, King has a long history of misdemeanor convictions that prevent any of his felony convictions from washing out. RCW 9.94A.525 requires that a felony conviction wash out from offender score calculation if the defendant has spent a certain amount of time in the community "without committing any crime." RCW 9.94A.525(2)(b). At sentencing, the State presented undisputed evidence that King had been convicted of approximately thirty misdemeanors between 1990 and 2007. The record shows that King acknowledged this criminal history and agreed with the State that his offender score calculation was 5. King's own presentence report he submitted for sentencing indicated an offender score of 5. Although the trial court did not expressly include the misdemeanors in its findings, the record shows and King does not dispute, that the trial court considered the misdemeanors in its offender score calculation:

THE COURT: . . . And I'm looking at—let me just share this with you, I'm looking at your Appendix B, I'll just come down—It's a long list of things dating back, you know?

MR. KING: (laughs) Yeah.

-11-

Report of Proceedings (RP) at (Sept. 18, 2014) at 15. When a defendant affirmatively acknowledges his criminal history as presented by the State, the State is not required further to prove that history by a preponderance of the evidence. State v. Ross, 152 Wn.2d 220, 232-33, 95 P.3d 1225 (2004).

Here, King's argument seems to be that the trial court's findings do not support the offender score calculation. He does not dispute his criminal history as presented by the State, nor does he dispute that this complete history yields a calculation of 5. Instead he asserts that the trial court's findings, which include only his felony convictions and not his misdemeanors, does not support a calculation of 5. But the record shows that he acknowledged his complete criminal history and that the trial court considered this history when it determined King's offender score. In other words, though the trial court's findings do not include the misdemeanors, nothing in the record shows that the offender score calculation is erroneous. During oral argument before this court, King's counsel conceded that had the trial court included King's history of misdemeanors in its findings, the offender score calculation would be correct. Therefore, even if we assume, without deciding, that the trial court erred when it failed to include King's misdemeanors in its findings, that error was harmless. See State v. Fleming, 140 Wn. App. 132, 170 P.3d 50 (2007) (When the recalculation of an offender score would be the same on remand, any calculation error is harmless.). Because King has failed to show that his offender score calculation would be different on remand, we affirm.

Appeal Costs

King asks this court to waive any costs for this appeal based on his present and future ability to pay. Pursuant to our discretionary authority under RAP 14.2, we grant King's request and waive appellate costs.

CONCLUSION

For the foregoing reasons, we affirm the judgment and sentence.

WE CONCUR: