**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clientlawreports/.

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| THE STATE OF WASHINGTON, | ) | No. 82239-0-I |
| | ) | |
| | ) | DIVISION ONE |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| GERONIMO LUCAS-VICENTE | ) | PUBLISHED OPINION |
| AKA MAYNOR WILLY RAMIREZ LOPEZ | ) | |
| AKA MAYNOR ALEXIS MONTERO, | ) | |
| | ) | |
| Appellant. | ) | |

BOWMAN, J. — Geronimo Lucas-Vicente appeals his jury convictions for domestic violence assault in the second degree, felony harassment, and tampering with a witness. He argues that witness tampering is an alternative means crime and that the trial court violated his right to a unanimous verdict by failing to instruct the jury properly. Lucas-Vicente also claims the prosecutor engaged in prejudicial misconduct during closing argument. We hold that witness tampering is an alternative means crime. But because sufficient evidence at trial supported each charged alternative, the trial court did not err by failing to instruct the jury as to unanimity. We also reject Lucas-Vicente's claims of prosecutorial misconduct, and affirm.

Citations and pin cites are based on the Westlaw online version of the cited material.

No. 82239-0-I/2

FACTS

On February 9, 2020, Lucas-Vicente and his girlfriend Amalfi Samol[1] argued about her friend, Melvin Arteaga Ramos.[2] Lucas-Vicente punched, bit, and pushed Samol to the ground, then started strangling her. Arteaga Ramos watched the assault and believed Lucas-Vicente might kill Samol, so he called 911 for help.[3] When officers arrived, they found Samol lying on her back in the street with Lucas-Vicente "on top of" her. An officer told Lucas-Vicente to back away and wait by the patrol car, which he did.

Samol was crying and "trying to catch her breath." In a "raspy" voice, Samol told officers that Lucas-Vicente was " 'trying to kill me' while pointing to a belt" on the ground next to her. Officers saw blood on Samol's face; scratches on her face, neck, arms, and hands; what looked like human bite marks on her lip and neck; and "elongated red marks" on her neck consistent with strangulation by an object other than human hands.

Police arrested Lucas-Vicente and booked him into the King County jail. Lucas-Vicente then called Samol from jail.[4] During the recorded call, Lucas-Vicente told Samol, "Just don't bring charges" and, "Don't come [to court] tomorrow." Samol was concerned that her car was about to be towed, so she

---

[1] The record also refers to Samol as "Amalfi Samol Medina." We call her "Samol" based on her self-identification at trial.

[2] The record reveals some discrepancy in Arteaga Ramos' legal name. We call him "Arteaga Ramos" based on his self-identification at trial.

[3] The State admitted a transcript of the 911 call with a Spanish-to-English translation as exhibit 46.

[4] The State admitted a transcript of the jail call with a Spanish-to-English translation as exhibit 47.

asked Lucas-Vicente, "Where are my keys."  He said he would tell Samol where

the keys were, but only if she agreed not to "go forward with anything" and not

"go tomorrow."  Samol rejected Lucas-Vicente's "blackmail" and said she was

"going to present all of [the] evidence" showing he tried to "kill" her, "bite" her,

and "pick up the belt and grab [her] by the neck."  Lucas-Vicente told her

repeatedly, "Don't do it. . . . Don't do anything."

The State charged Lucas-Vicente with second degree assault, felony

harassment, and witness tampering, each with a domestic violence aggravator.

A jury convicted Lucas-Vicente of all three crimes, including the domestic

violence aggravators.

Lucas-Vicente appeals.

ANALYSIS

Unanimity Instruction

Lucas-Vicente claims that witness tampering is an alternative means

crime and that the trial court erred in failing to instruct the jury on unanimity.  The

State argues that witness tampering is not an alternative means crime.[5]  In the

alternative, the State contends the trial court did not need to instruct the jury on

unanimity because sufficient evidence satisfied each statutory alternative.

We review the sufficiency of jury instructions de novo.  State v. Clark-El,

196 Wn. App. 614, 619, 384 P.3d 627 (2016) (citing State v. Brooks, 142 Wn.

___

[5] Lucas-Vicente points to several cases in which we determined that witness tampering is an alternative means crime.  See State v. Fleming, 140 Wn. App. 132, 135, 170 P.3d 50 (2007); State v. Lobe, 140 Wn. App. 897, 902-03, 167 P.3d 627 (2007); State v. Nonog, 145 Wn. App. 802, 812-13, 187 P.3d 335 (2008), aff'd, 169 Wn.2d 220, 237 P.3d 250 (2010); State v. McDonald, 183 Wn. App. 272, 276, 333 P.3d 451 (2014).  The State contends none of these cases meaningfully analyzed the issue.

App. 842, 848, 176 P.3d 549 (2008)).  Instructions are sufficient if they permit each party to argue its theory of the case, do not mislead the jury, and when read as a whole, properly inform the jury of the applicable law.  State v. Mark, 94 Wn.2d 520, 526, 618 P.2d 73 (1980); State v. Dana, 73 Wn.2d 533, 536, 439 P.2d 403 (1968) ("instructions must be read as a whole").  The to-convict instruction carries special weight because it gives the jury a " 'yardstick' " to measure guilt or innocence.  State v. Mills, 154 Wn.2d 1, 6, 109 P.3d 415 (2005).

A.  Alternative Means

Article I, section 21 of the Washington Constitution guarantees criminal defendants the right to a unanimous jury verdict.  State v. Ortega-Martinez, 124 Wn.2d 702, 707, 881 P.2d 231 (1994).  This may also include the right to express jury unanimity on the means by which the defendant committed the crime.  Id. When a defendant "is charged with (and the jury is instructed on) an alternative means crime, . . . a particularized expression of jury unanimity is required" if there is insufficient evidence to support each of the means.  State v. Owens, 180 Wn.2d 90, 95, 323 P.3d 1030 (2014).

An alternative means crime is proscribed criminal conduct that the State may prove in various ways.  State v. Smith, 159 Wn.2d 778, 784, 154 P.3d 873 (2007).  Because the legislature has not defined what constitutes an alternative means crime, we must evaluate each case on its own merits to determine whether a statute provides alternative means for committing a particular crime. State v. Peterson, 168 Wn.2d 763, 769, 230 P.3d 588 (2010).  Though there is

No. 82239-0-I/5

no bright-line rule for making this determination, three main principles guide us. See Owens, 180 Wn.2d at 96.

First, "a statute divided into subparts is more likely to be found to designate alternative means." State v. Lindsey, 177 Wn. App. 233, 241, 311 P.3d 61 (2013) (citing State v. Al-Hamdani, 109 Wn. App. 599, 607, 36 P.3d 1103 (2001)). But using the disjunctive "or" in a list of ways to commit the crime does not necessarily mean that they are alternative means. Owens, 180 Wn.2d at 96. Second, the statutory definitions of the elements of a crime seldom create alternative means for that crime. Id. Third, we focus on whether each alleged alternative describes distinct acts that amount to the same crime. State v. Sandholm, 184 Wn.2d 726, 734, 364 P.3d 87 (2015). The more varied the criminal conduct, the more likely the statute describes alternative means. Id.; see also Owens, 180 Wn.2d at 97 ("[A]lternative means should be distinguished based on how varied the actions are that could constitute the crime."). When the statute describes only minor nuances of the same act, it is more likely that the various "alternatives" are merely facets of the same criminal conduct. Sandholm, 184 Wn.2d at 734.

Under RCW 9A.72.120(1), a person commits the crime of witness tampering if he or she tries to induce a witness in an official proceeding to:

>  (a) Testify falsely or, without right or privilege to do so, to withhold any testimony; or
>  (b) Absent himself or herself from such proceedings; or
>  (c) Withhold from a law enforcement agency information which he or she has relevant to a criminal investigation.

5

No. 82239-0-I/6

Applying the principles discussed above, we conclude that witness tampering is an alternative means crime. First, the statute uses the disjunctive "or" between each subsection to distinguish conduct, suggesting the legislature intended alternative means. Second, the "alternatives" amount to more than mere definitions of essential terms of the crime. And third, each subsection is itself an essential element describing a distinct way that the defendant commits the crime—attempting to induce a witness' testimony, appearance at an official proceeding, or cooperation with law enforcement's investigation. RCW 9A.72.120(1)(a)-(c).

We reached the same conclusion for a similarly structured statute, interfering with the reporting of domestic violence. See State v. Nonog, 145 Wn. App. 802, 812-13, 187 P.3d 335 (2008), aff'd, 169 Wn.2d 220, 237 P.3d 250 (2010); RCW 9A.36.150. Under RCW 9A.36.150(1), a person commits the crime of interfering with the reporting of domestic violence if the person:

> (a) Commits a crime of domestic violence, as defined in RCW 10.99.020; and
> (b) Prevents or attempts to prevent the victim of or a witness to that domestic violence crime from calling a 911 emergency communication system, obtaining medical assistance, or making a report to any law enforcement official.

In concluding that the offense is an alternative means crime, we determined:

> The variations [in RCW 9A.36.150(1)] are themselves essential terms. . . . Interfering with reporting of a crime of domestic violence . . . . does not criminalize all acts that might appear to constitute interfering with the reporting of domestic violence. Interference is culpable only when a victim or witness is trying to report the crime to a particular entity.

Nonog, 145 Wn. App. at 813.

6

Here, too, the variations in a witness' conduct are themselves essential terms of the crime of tampering with a witness. Attempts to induce a witness are criminal only if they relate to the witness' testimony in an official proceeding, appearance at an official proceeding, or willingness to provide information in a criminal investigation.[6] RCW 9A.72.120(1)(a)-(c). We agree with Lucas-Vicente that witness tampering is an alternative means crime.

B. To-Convict Jury Instruction

Lucas-Vicente next contends the court instructed the jury as to three alternative means of witness tampering: (1) inducing Samol to testify falsely, (2) inducing Samol to withhold testimony, and (3) inducing Samol to absent herself from an official proceeding. We disagree.

The alternative means analysis does not apply to subalternatives. State v. Christian, 18 Wn. App. 2d 185, 202, 489 P.3d 657, review denied, 198 Wn.2d 1024, 497 P.3d 394 (2021). When a statute provides alternative ways to satisfy each alternative means (i.e., "a 'means within [a] means' "), the alternative means doctrine does not apply. State v. Smith, 159 Wn.2d 778, 783, 154 P.3d 873 (2007)[7] (quoting In re Pers. Restraint of Jeffries, 110 Wn.2d 326, 339, 752 P.2d 1338 (1988)). As discussed above, when alternatives are simply "minor nuances inhering in the same act," they are merely "facets of the same criminal conduct." Sandholm, 184 Wn.2d at 734.

_____

[6] Division Three of our court reached the same conclusion when considering the similarly worded witness intimidation statute, RCW 9A.72.110(1). State v. Boiko, 131 Wn. App. 595, 599, 128 P.3d 143 (2006) (Witness intimidation is an alternative means crime because a person may commit the crime "by using a threat against a current or prospective witness in order to accomplish any one of four different goals.").

[7] Alteration in original; internal quotation marks omitted.

No. 82239-0-I/8

Here, the court instructed the jury that to convict Lucas-Vicente of witness tampering, it must find:

(1) That on or about February 9, 2020, the defendant attempted to induce Amalfi Samol Medina to testify falsely or, without right or privilege to do so, withhold any testimony, or absent himself or herself from any official proceeding; and

(2) That Amalfi Samol Medina was a witness or a person the defendant had reason to believe was about to be called as a witness in any official proceedings; and

(3) That any of these acts occurred in the State of Washington.

Subsection (1) of the to-convict instruction stems from RCW 9A.72.120(1)(a) and (b). A defendant is culpable under subsection (1)(a) of the statute when he induces the witness in an official proceeding to testify falsely or to withhold testimony altogether. These differences are mere variations of the same act—influencing the testimony of a witness. They do not amount to alternative means. We conclude that the State charged Lucas-Vicente with only two alternative means: (1) inducing Samol to testify falsely or withhold her testimony under RCW 9A.72.120(1)(a) and (2) inducing Samol to absent herself from any official proceeding under RCW 9A.72.120(1)(b).

C. Sufficiency of the Evidence

The State argues that sufficient evidence supports each alternative means charged, so the trial court did not err in failing to instruct the jury on unanimity. We agree.

When there is sufficient evidence to support each of the alternative means of committing a crime, express jury unanimity as to which means the defendant

8

committed is not required. <u>Owens</u>, 180 Wn.2d at 95. Due process concerns arise only where sufficient evidence does not support one or more of the alternatives presented to the jury. <u>State v. Woodlyn</u>, 188 Wn.2d 157, 165, 392 P.3d 1062 (2017). When sufficient evidence supports each alternative means submitted to the jury, we infer that the jury was unanimous as to the means. <u>Ortega-Martinez</u>, 124 Wn.2d at 707-08. Evidence is sufficient if, viewed in a light most favorable to the State, any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt. <u>Owens</u>, 180 Wn.2d at 99.

Lucas-Vincente concedes that sufficient evidence shows he tried to induce Samol to withhold testimony as well as absent herself from court. We accept the concession. Samol testified that Lucas-Vicente told her not to come to court and not to "press charges." And the jury received a transcript of the phone call where Lucas-Vicente urged Samol not to "go forward with anything" or "do anything." He also told Samol, "Just don't bring charges" and, "Don't come [to court] tomorrow." Because sufficient evidence supports both statutory alternatives charged, the trial court did not err in failing to instruct the jury on unanimity.

<u>Prosecutorial Misconduct</u>

Lucas-Vicente argues that the prosecutor committed misconduct during closing argument by appealing to the passions of the jury and vouching for the credibility of a State witness and that the court erred by overruling his objections.

To establish prosecutorial misconduct, Lucas-Vicente must show that the prosecutor acted improperly and that the conduct prejudiced his right to a fair trial. <u>State v. Dhaliwal</u>, 150 Wn.2d 559, 578, 79 P.3d 432 (2003). A defendant

9

who does not object to alleged misconduct waives any claim of error unless he shows the misconduct was so flagrant and ill intentioned that a jury instruction could not have cured the resulting prejudice. State v. Emery, 174 Wn.2d 741, 760-61, 278 P.3d 653 (2012). But when, as here, a defendant objects to the alleged misconduct, he need show only that the remarks were improper and that there is a substantial likelihood the misconduct affected the verdict. Id. at 760. We consider alleged improper statements by a prosecutor in the context of the argument as a whole, the issues in the case, the evidence, and the jury instructions. State v. Russell, 125 Wn.2d 24, 85-86, 882 P.2d 747 (1994). We review the trial court's decision on prosecutorial misconduct for an abuse of discretion. State v. Robinson, 189 Wn. App. 877, 893, 359 P.3d 874 (2015).

### A. Appealing to the Passions of the Jury

Lucas-Vicente alleges the prosecutor improperly appealed to the jurors' emotions by exaggerating the severity of his assault on Samol. The State contends the prosecutor argued a reasonable inference from the evidence to establish a necessary element of felony harassment. We agree with the State.

The State has wide latitude to make closing arguments using reasonable inferences from the evidence, but a prosecutor must seek convictions based on only probative evidence and sound reason. State v. Thorgerson, 172 Wn.2d 438, 448, 258 P.3d 43 (2011); State v. Casteneda-Perez, 61 Wn. App. 354, 363, 810 P.2d 74 (1991). A prosecutor commits misconduct by asking jurors to convict based on their emotions rather than the evidence. In re Pers. Restraint of Glasmann, 175 Wn.2d 696, 704, 286 P.3d 673 (2012).

10

Lucas-Vicente argues the prosecutor's statement during closing argument that "Mr. Lucas Vicente could have very well killed [Samol] that day" "inflamed the jury" by "painting him as a potential murderer—one whom the jury surely needed to convict in order to prevent him from potentially murdering Ms. Samol or others." But the State showed that Lucas-Vicente bit Samol on her lip and neck, punched her in the face multiple times, choked her with his hands, and strangled her with a belt. Samol testified that while he did these acts, Lucas-Vicente told her to " '[h]urry up and die' " multiple times. And officers who arrived at the scene testified that Samol kept repeating, " 'He tried to kill me.' " Substantial evidence supported the prosecutor's inference.

The prosecutor's argument was also relevant to the charge of felony harassment. To prove felony harassment, the State had to show that Lucas-Vicente knowingly threatened to kill Samol and that his conduct placed her in reasonable fear that he would carry out the threat. See RCW 9A.46.020(2)(b)(ii), (1)(b). The severity of Lucas-Vicente's physical attack was probative of the reasonableness of Samol's fear that he would kill her. The prosecutor's comment did not amount to misconduct and the court did not err in overruling the defense's objections.

B. Vouching

Lucas-Vicente also complains that the prosecutor improperly vouched for Arteaga Ramos' credibility. He points to the prosecutor's statement to the jury that Arteaga Ramos "shared the truth about what happened on February 9th, 2020" and "was truthful" in describing what he saw and heard during the incident.

11

No. 82239-0-I/12

The State asserts that looking at the prosecutor's entire argument, she was not expressing an opinion, but instead showing the jury it could believe Arteaga Ramos' testimony because it aligned with the statements he made to the 911 operator during the assault. Again, we agree with the State.

It is misconduct for a prosecutor to express a personal belief in the veracity of a witness. State v. Ish, 170 Wn.2d 189, 196, 241 P.3d 389 (2010). Vouching occurs if the prosecutor either (1) places the prestige of the government behind the witness or (2) indicates that information not presented to the jury supports the witness' testimony. Robinson, 189 Wn. App. at 892-93. But prosecutors may "argue reasonable inferences from the evidence, including evidence respecting the credibility of witnesses." Thorgerson, 172 Wn.2d at 448.

During the assault, Arteaga Ramos told the 911 operator that "someone is grabbing a woman. He is choking her." He pleads with 911 to "come now" because "[s]omeone is beating up a woman here" and "asphyxiating her." And at different times throughout the entire 911 call, Arteaga Ramos is yelling at someone else, "Don't hit her like that, dude," "Don't grab her like that," and, "Let her go." He then tells the 911 operator, "He is hitting her a lot." At trial, Arteaga Ramos testified that he saw Lucas-Vicente punch Samol multiple times then grab her by the hair, throw her to the ground, sit on her chest, and choke her with his hands and belt.

In closing argument, the prosecutor reread the court's instruction that the jurors "are the sole judges of the credibility of each witness." Consistent with this instruction, she told the jury it could consider, among other things, "the

12

reasonableness of the witness's statements in the context of all of the other evidence." She then compared Arteaga Ramos' testimony at trial with what he told the 911 operator on the day of the incident and urged the jury to believe him because "[h]is testimony lines up with what he saw." The prosecutor's comments, viewed in context, were reasonable inferences from the evidence relating to Arteaga Ramos' credibility. They did not amount to an expression of personal belief in his veracity, and the court did not erred in overruling defense's objections.

We hold that witness tampering is an alternative means crime. But because the State presented sufficient evidence at trial to support each charged alternative, we conclude the trial court did not err by failing to instruct the jury as to unanimity. And because we reject Lucas-Vicente's claims of prosecutorial misconduct, the court did not err in overruling his objections. Affirmed.

Bremer, J

WE CONCUR:

Smith, A.C.J.

Verellen, J

13