IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>　　　　　　　　Respondent,<br><br>　　v.<br><br>TSEGAZEAB AMINE<br>ZERAHAIMANOT,<br><br>　　　　　　　　Appellant. | No.86241-3-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

COBURN, J. — When Tsegazeab Zerahaimanot was 23 years old[1] he shot and killed Forrest Starret. A jury convicted Zerahaimanot of felony murder in the first degree and unlawful possession of a firearm in the second degree.[2] At the time of his amended sentence in 2014 he had an offender score of "2." In 2024 Zerahaimanot's prior cocaine possession conviction was vacated[3] and he was resentenced with an offender score of "1" to a standard-range sentence plus a 60-month firearm enhancement. He now claims for the first time on appeal he should again be resentenced because his convictions were based on the same criminal conduct that should have been determined by a jury; that RCW 9.94A.540(1) and RCW 9.94A.533(3)(a) are unconstitutional both facially and

---

[1] The State notes that Zerahaimanot was actually 23½ years old at that time.

[2] Following his direct appeal, this court directed the trial court to vacate Zerahaimanot's premeditated murder conviction on double jeopardy grounds. State v. Lee, No. 62864-0-I, slip op. (unpublished portion) at 41-42 (Wash. Ct. App. Feb. 7, 2011).

[3] See State v. Blake, 197 Wn.2d 170, 195, 481 P.3d 521 (2021) (holding that former RCW 69.50.4013(1) (2017) prohibiting possession of a controlled substance violates the due process clauses of the state and federal constitutions and is void).

as applied to him; that the mitigating circumstance of significant impairment does not have to be "significant"; and that his sentence constitutes cruel punishment. Zerahaimanot has either waived these claims by failing to establish they are manifest errors affecting a constitutional right or otherwise demonstrate an entitlement to relief. RAP 2.5(a). We affirm.

FACTS

On August 21, 2007, Zerahaimanot, at 23 years old, shot and killed Forrest Starret in a parked truck after the two interacted in an apartment where Starret asked Zerahaimanot for drugs. A jury convicted Zerahaimanot of felony murder in the first degree and premeditated murder in the first degree. The court also found him guilty of unlawful possession of a firearm in the second degree (UPF). In 2014 this court vacated his premeditated murder in the first-degree conviction on double jeopardy grounds.[4] His amended sentence was based on an offender score of "2" for each count, which included a prior conviction for cocaine possession.

In 2022, Zerahaimanot was again resentenced by agreement of the parties because of our state Supreme Court decision in State v. Blake.[5] At the hearing the parties agreed that Zerahaimanot's corrected offender score should be "1."[6] With an

---

[4] Lee, No. 62864-0-I, slip op. (unpublished portion) at 41-42.
[5] Holding that RCW 69.50.4013, criminalizing simple drug possession, was unconstitutional because it lacked an intent element. 197 Wn.2d 170, 173-74, 481 P.3d 521 (2021).
[6] Defense counsel initially filed a sentencing memorandum asserting that Zerahaimanot's corrected offender score was zero. But at the resentencing hearing, defense counsel corrected himself explaining that he had erred in reading the amended judgment and sentence. Specifically, counsel stated "[i]t was an error in terms of reading the amended judgment and sentence. So that's my error, but [the offender score is] one."

2

offender score of "1," Zerahaimanot's standard sentencing range was 250 to 333 months, followed by a mandatory 60-month firearm enhancement.

At resentencing, the State recommended the high end of the standard range. Zerahaimanot requested 240 months, an exceptional sentence below the standard range because Zerahaimanot was a judgment-impaired, late adolescent at 23 years old. Specifically, Zerahaimanot asked the court to impose an exceptional sentence based on youthfulness under State v. O'Dell, 183 Wn.2d 680, 358 P.3d 359 (2015) (remanding sentence of offender that committed rape 10 days after turning 18 because court refused to consider youthfulness), and to extend the holding of In re Pers. Restraint of Monschke, 197 Wn.2d 305, 482 P.3d 276 (2021) (holding life sentence without parole unconstitutional for offenders 19 and 20 years old). Zerahaimanot filed a resentencing hearing memorandum arguing that his 25-year mandatory sentence is unconstitutional as applied to him and "that the constitution requires discretion" under O'Dell and Monschke to award an exceptional sentence below the sentencing range.

Unlike Zerahaimanot's prior sentencings and trial, Zerahaimanot elected to make a statement at this resentencing hearing. He described, on the date of the crime, that he "was in a good mood" when he first arrived at the apartment. He stated that his mood changed after Starrett asked him for drugs a "few times." Specifically, Zerahaimanot described as being "agitated" and "irritated" that Starett was "continuously" asking him for drugs. Zerahaimanot indicated that he takes full responsibility and accountability for his actions.

Ultimately, the resentencing court imposed a sentence of 310 months of incarceration for felony murder in the first degree, plus 60 months on the firearm enhancement, for a total of 370 months.[7]

The resentencing court denied Zerahaimanot's request for a lower sentence under O'Dell and Monschke. First, in reference to Monschke, the court stated that "[b]oth parties agree that there is no case law that supports an extension of the definition of juveniles as a protected class to whom mandatory minimums cannot apply to the age of 24." Therefore, the court stated that "[i]n looking at legislation that involves age-related protections, it appears that those protections generally expire at 21" because "[t]his is when you'd age out of foster care or guardianships and when they are no longer required to have co-signers for credit cards." The court acknowledged that "[i]t is difficult to measure brain maturity in a vacuum" and that reports before the court show that the brain can continue to develop to the age of 22. However, the court found that

> [b]ased on lack of evidence before this Court to find that Mr. Zerahaimanot would be a member of a group to whom the application of mandatory minimums would be unconstitutional, the Court declines to make such a finding and does not find that the mandatory minimums set forth in this case are unconstitutional.

The court did not end its analysis there, stating that its decision not to extend Monschke to Zerahaimanot does not mean his age is not relevant. Specifically, the court explained that under O'Dell, "youthfulness can be a basis for a finding of an exceptional sentence." The court engaged in a long discussion of whether to award an exceptional sentence under O'Dell.

---

[7] An eight-month sentence was also imposed for Zerahaimanot's UPF conviction to run concurrently with his murder sentence.

Specifically, the court discussed that it received letters at resentencing and reviewed the letters submitted when Zerahaimanot was originally sentenced in 2008. In reviewing the letters, the court stated that they were mostly the same, including that in 2008 Zerahaimanot was described as "a thoughtful young man," "devoted father of two young children," "committed partner to the mother of his children," and "mature and thoughtful." The letters also discussed that Zerahaimanot was "influenced by his peers" and people submitting the letters were "disappoint[ed] about decisions that he made in terms of his lifestyle and his decision to sell drugs."

Then, the court stated that the testimony from resentencing established that Zerahaimanot is a different person today than he was in 2007. However, the court was not persuaded by the documentation, letters, or testimony "that at 23 and a half, Mr. Zerahaimanot's capacity to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of the law was significantly impaired by his age." Zerahaimanot did not argue, as he does now on appeal, that the impairment does not have to be significant.

The court further explained that in 2007 Zerahaimanot was actively selling drugs for over a decade and frequently moving between households but was still able to provide for his family and children. Therefore, the court explained that it appeared that Zerahaimanot was living as an adult in 2007, balancing his children, job, and family obligations.

The court noted that while this resentencing judge was not the judge that presided over the trial in 2007, this resentencing hearing was the first time Zerahaimanot asserted his right to speak to the events that led to his conviction. The

5

court explained that it accepted as true Zerahaimanot's state of mind and impressions unless they differ as to the jury's findings. Specifically, the court highlighted that Zerahaimanot's perceptions, whether true or not, are important to determine whether age was a mitigating factor. In reviewing Zerahaimanot's testimony, the court found that "Zerahaimanot's recollection of the evening was that he was calm, if somewhat annoyed." Therefore, the court stated that it "cannot find that there is a basis for a sentence below the standard range based on the mitigating factors of youth."

Zerahaimanot timely appeals.

## DISCUSSION

### "Same Criminal Conduct" Analysis under RCW 9.94A.589(1)(a)

Zerahaimanot alleges that the resentencing court erred in concluding that his two convictions constituted separate criminal conduct under RCW 9.94A.589(1)(a). However, Zerahaimanot never argued to the resentencing court that his convictions were based on the "same criminal conduct."

This court has established that when a defendant does not assert that their convictions are the same criminal conduct to the sentencing court, the sentencing court is not required to conduct the "same criminal conduct" analysis. State v. Jackson, 28 Wn. App. 2d 654, 663, 538 P.3d 284 (2023). Specifically, the defendant bears the burden of establishing at resentencing that their convictions are the same criminal conduct because "[t]he burden is on a moving party to come forward with sufficient facts to warrant the exercise of discretion in his or her favor." Id. (alteration in original) (citing State v. Hoffman, 166 Wn.2d 51, 74, 804 P.2d 577 (1991)). Our state Supreme Court has made clear that "[t]he [sentencing] scheme—and the burden—could not be more

6

straightforward: each of a defendant's convictions counts toward his offender score unless he convinces the court that they involved the same criminal intent, time, place, and victim." State v. Graciano, 176 Wn.2d 531, 540, 295 P.3d 219 (2013).

Additionally, this court has held that, if a resentencing court rules consistently with the SRA's presumption that two or more current offenses and all prior offenses are counted separately in offender score computation, it does not improperly calculate a defendant's offender score when it does not, sua sponte, conduct the "same criminal conduct" analysis. Jackson, 28 Wn. App. 2d at 664; RCW 9.94A.525(5)(a)(i). Altogether, a defendant cannot assert for the first time on appeal that a sentencing court erred because it did not consider whether two or more current convictions are the same criminal conduct. See, e.g., Jackson, 28 Wn. App. 2d at 667-68; In re Pers. Restraint of Shale, 160 Wn.2d 489, 494-95, 158 P.3d 588 (2007); State v. Nitsch, 100 Wn. App. 512, 524, 997 P.2d 1000 (2000).

Zerahaimanot concedes that he did not challenge the resentencing court's calculation of his offender score. Additionally, the trial court treated Zerahaimanot's convictions as separate, consistent with the SRA presumption. Accordingly, Zerahaimanot waived his claim that his convictions were based on the same criminal conduct.[8]

Zerahaimanot seems to argue that by not deciding that his convictions were the same criminal conduct under RCW 9.94A.589(1)(a), the court made a sentencing

---

[8] The State also relies on the invited error doctrine to argue that this court should not review whether a jury or the court needs to determine the "same criminal conduct" analysis. Because we conclude that Zerahaimanot cannot assert this issue for the first time on appeal and there was no error with the resentencing court, we do not decide whether Zerahaimanot invited error.

determination that only a jury could make. He relies on the United States Supreme Court's recent decision in Erlinger v. United States, 602 U.S. 821, 144 S. Ct. 1840, 219 L. Ed. 2d 451 (2024). We note that Erlinger was decided after Zerahaimanot's resentencing. RCW 9.94A.589(1)(a) states:

> … whenever a person is to be sentenced for two or more current offenses, the sentence range for each current offense shall be determined by using all other current and prior convictions as if they were prior convictions for the purpose of the offender score: PROVIDED, That if the court enters a finding that some or all of the current offenses encompass the same criminal conduct then those current offenses shall be counted as one crime. Sentences imposed under this subsection shall be served concurrently. Consecutive sentences may only be imposed under the exceptional sentence provisions of RCW 9.94A.535. "Same criminal conduct," as used in this subsection, means two or more crimes that require the same criminal intent, are committed at the same time and place, and involve the same victim. This definition applies in cases involving vehicular assault or vehicular homicide even if the victims occupied the same vehicle.

In Erlinger, the defendant pleaded guilty to possession of a firearm in violation of 18 U.S.C. § 922(g). 602 U.S. at 825. The government also charged Erlinger under the Armed Career Criminal Act (ACCA). Id. At the time, the ACCA increased Erlinger's possible sentence of up to 10 years to a minimum of 15 years if Erlinger had three prior violent felony convictions or serious drug offenses that were "committed on occasions different from one another." Id. The federal district court found that Erlinger had prior burglary convictions that spanned multiple days, supporting an ACCA sentence. Id. at 827. The U.S. Supreme Court held that a jury must determine whether prior offenses occurred on three or more different occasions. Id. at 835.

Notably, the Court held that "[w]hile recognizing Mr. Erlinger was entitled to have a jury resolve ACCA's occasions inquiry unanimously and beyond a reasonable doubt, we decide no more than that." Id. Additionally, this court has stated that Erlinger's

holding is limited to the ACCA's occasions inquiry. State v. Anderson, 31 Wn. App. 2d 668, 681, 552 P.3d 803 (2024). Zerahaimanot's reliance on Erlinger is unavailing.

### Mandatory 25-year Sentence Facially and As Applied Unconstitutional

Zerahaimanot contends that RCW 9.94A.540(1)(a) and RCW 9.94A.533(3)(a) are unconstitutional on its face and as applied to him as a late adolescent. RCW 9.94A.540(1)(a) requires that adults convicted of murder in the first degree are sentenced to a term of total confinement not less than 20 years. RCW 9.94A.533(3)(a) requires an additional 60 months be added to for any class A felony as a firearm enhancement.

We review constitutional issues de novo. City of Seattle v. Evans, 184 Wn.2d 856, 861, 366 P.3d 906 (2015). Statutes are presumed constitutional, and the challenger has the burden to show unconstitutionality. Id. at 861-62.

*A. Facial Challenge*

"[A] successful facial challenge is one where no set of circumstances exists in which the statute, as currently written, can be constitutionally applied." State v. Fraser, 199 Wn.2d 465, 486, 509 P.3d 282 (2022) (alteration in original). "The remedy for facial unconstitutionality 'is to render the statute totally inoperative.'" Id. Additionally, an "appellate court may refuse to review any claim of error which was not raised in the trial court." RAP 2.5(a). A party must raise an issue at trial to preserve the issue for appeal, unless the party can show the presence of a "manifest error affecting a constitutional right." RAP 2.5(a)(3); State v. Robinson, 171 Wn.2d 292, 304, 253 P.3d 84 (2011). "The defendant must identify a constitutional error and show how the alleged error actually affected the defendant's rights at trial." State v. Kirkman, 159 Wn.2d 918, 926-27, 155

P.3d 125 (2007). A "manifest" error is one that causes "actual prejudice" and allows appellate review. Id. at 927; State v. Ramos, 24 Wn. App. 2d 204, 214, 520 P.3d 65 (2002). Actual prejudice means "the claimed error had practical and identifiable consequences." State v. Shelton, 194 Wn. App. 660, 675, 378 P.3d 230 (2016).

In the instant case, we decline to address Zerahaimanot's facial challenge to RCW 9.94A.540(1)(a) and RCW 9.94A.533(3)(a) because he did not argue it at his resentencing and failed to address in his briefing how his claim is a manifest error affecting a constitutional right. See, e.g., State v. Lindsey, 177 Wn. App. 233, 247, 311 P.3d 61 (2013) (declining to address claim after appellant failed to argue RAP 2.5(a) exceptions applied).

B.  As Applied Challenge

"[A]n as-applied challenge to the constitutional validity of a statute is characterized by a party's allegation that application of the statute in the specific context of the party's actions or intended actions is unconstitutional." Evans, 184 Wn.2d at 862 (alteration in original). If a statute is found to be unconstitutional as-applied, future application of that statute in a similar context is prohibited, but the statute is not totally invalidated. Id.

Zerahaimanot contends that RCW 9.94A.540(1)(a) and RCW 9.94A.533(3)(a) are unconstitutional as applied to him as a 23-year-old, youth offender. Zerahaimanot, relying on the Eighth Amendment prohibition against cruel and unusual punishment as it relates to juvenile offenders, asks for this court to extend the holding in Monschke to a 23-year-old.

The U.S. Supreme Court has held that, under the Eighth Amendment, juveniles that commit murder cannot be sentenced to mandatory life without parole. Miller v. Alabama, 567 U.S. 460, 479, 132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012). As a result, our state Supreme Court in State v. Houston-Sconiers held that, when imposing a mandatory firearm enhancement on juvenile defendants, the trial court must be able to consider mitigating qualities of youth and have discretion to award a sentence below the otherwise applicable SRA range or sentencing enhancement. 188 Wn.2d 1, 9, 21, 391 P.3d 409 (2017). Houston-Sconiers is explicitly limited to juveniles. State v. Mandefero, 14 Wn. App. 2d 825, 837, 473 P.3d 1239 (2020) (citing State v. Gore, 101 Wn.2d 481, 487, 681 P.2d 227 (1984) ("the Washington Supreme Court's decision to limit Houston-Sconiers to juveniles is binding on all lower courts of this state").

However, our state Supreme Court recognizes "psychological and neurological studies showing that the 'parts of the brain involved in behavior control' continue to develop well into a person's 20s." Monschke, 197 Wn.2d at 321 (internal quotation marks omitted) (quoting O'Dell, 183 Wn.2d at 691-92). The U.S. Supreme Court, on the other hand, draws the line at 18 to distinguish who qualifies as juvenile offenders. Roper v. Simmons, 543 U.S. 551, 574, 125 S. Ct. 1183, 161 L. Ed. 2d 1 (2005).[9] Regardless, our state Supreme Court has "repeated[ly] recogni[zed] that the Washington State

---

[9] In Roper, the Court explained:
[d]rawing the line at 18 years of age is subject, of course, to the objections always raised against categorical rules. The qualities that distinguish juveniles from adults do not disappear when an individual turns 18. By the same token, some under 18 have already attained a level of maturity some adults will never reach. … [H]owever, a line must be drawn.
543 U.S. at 574.

Constitution's cruel punishment clause often provides greater protection than the Eighth Amendment." State v. Roberts, 142 Wn.2d 471, 506, 14 P.3d 713 (2000).

Accordingly, our state Supreme Court has expanded consideration of youthfulness to offenders over 18 years old in limited situations. For example, in O'Dell, our state Supreme Court remanded a sentence based on the sentencing court's failure to consider youth as a mitigating circumstance for a defendant convicted of rape of a child in the second degree that took place 10 days after the defendant turned 18 years old. 183 Wn.2d at 683. Additionally, our state Supreme Court in Monschke held that the aggravated murder statute under RCW 10.95.030 (which requires life without parole) was unconstitutional as applied to 19- and 20-year-old defendants because it denies the trial judge discretion to consider the mitigating qualities of youth. Monschke, 197 Wn.2d at 311-13. However, this court and our state Supreme Court have declined to extend Monschke to 21-year-old offenders. In re Pers. Restraint of Davis, 200 Wn.2d 75, 83-84, 514 P.3d 653 (2022) (holding that Monschke did not extend to 21-year-old sentenced under different statute); State v. Meza, 22 Wn. App. 2d 514, 545, 512 P.3d 608 (2022) (holding that Monschke did not categorically extend leniency based on mitigating factors of youth to 21-year-old defendant). More recently, our Supreme Court explained that the lead opinion in Monschke "was careful to note it was not concluding that [life without parole] is categorically barred for young adults." In re Pers. Restraint of Kennedy, 200 Wn.2d 1, 23, 513 P.3d 769 (2022). (holding that Monschke was immaterial to 19-year-old defendant sentenced under different statute and not sentenced to life without parole).

Altogether, these holdings establish that during sentencing, youthfulness can provide the basis for an exceptional sentence, but Monschke does not extend to 21-year-old offenders. In the instant case, the resentencing court considered the mitigating qualities of youth and provided a five-paged explanation as to why an exceptional sentence was unwarranted based on the facts and circumstances of the case.[10] Additionally, Zerahaimanot cites no authority that extends Monschke to a 23-year-old. Zerahaimanot has not presented a basis to justify our consideration of his as-applied constitutional challenge.

Significant Impairment under RCW 9.94A.535(1)(e)

Zerahaimanot contends that under RCW 9.94A.535(1)(e) impairment does not have to be significant. Under RCW 9.94A.535(1)(e), a defendant's youthfulness can be a possible mitigating factor justifying an exceptional sentence below the standard sentencing range if "[t]he defendant's capacity to appreciate the wrongfulness of his or her conduct, or to conform his or her conduct to the requirements of the law, was significantly impaired." (Emphasis added.) As mentioned, a party must raise an issue at trial to preserve the issue for appeal, unless the party can show the presence of a "manifest error affecting a constitutional right." RAP 2.5(a)(3); Robinson, 171 Wn.2d at 304.

Zerahaimanot raises this argument for the first time on appeal and fails to address RAP 2.5(a) to show why this claim is a manifest constitutional error that warrants review on appeal. See, e.g., Lindsey, 177 Wn. App. at 247. Zerahaimanot has waived this claim.

---

[10] Zerahaimanot does not challenge the court's determination as to youthfulness.

## Cruel Punishment

Finally, Zerahaimanot asserts that his sentence for committing felony murder with a firearm constitutes cruel punishment because that conviction "did not require proof that he acted intentionally or with premeditation." It appears Zerahaimanot contends that sentencing offenders in their 20s to the statutory mandatory minimum for felony murder in the first degree is categorically excessive, disproportionate to the crime, and constitutes cruel punishment.

Zerahaimanot raises this argument for the first time on appeal and fails to address RAP 2.5(a) to show why this claim is a manifest constitutional error. <u>See, e.g.</u>, <u>Lindsey</u>, 177 Wn. App. at 247. This claim is waived.

We affirm.

WE CONCUR:

_____  Coburn, J.

_____  Birk, J.

_____  [signature]